## SETTLEMENT, RELEASE AND WAIVER OF FLSA CLAIMS AGREEMENT

This Settlement, Release and Waiver of FLSA Claims Agreement ("Agreement") is entered into between, Plaintiff / Opt-in Plaintiff, ROLAND ABRAHANTE, including any company or entity that is owned, operated or controlled by ROLAND ABRAHANTE (all collectively referred to herein as "ABRAHANTE") and Defendant, KABLELINK COMMUNICATIONS, LLC ("KABLELINK"). This Agreement shall at all times include and protect KABLELINK (and all of KABLELINK's related domestic and foreign business entities, affiliated entities, corporations, partnerships, limited liability companies, clients, insurers, and subsidiaries) as well as all current and former managers, directors, officers, owners, shareholders, partners, principals, members, board members, employees, clients, assigns and successors in interest, representatives, agents, attorneys, and insurers or reinsurers of KABLELINK and any persons or entities referred to above, both in their representative and individual capacities. All references to KABLELINK expressly include all of the aforementioned individuals, Defendant, and business entities, including any successor corporations or business entities.

### Section I – General Recitals & Representations

1.1     ABRAHANTE has filed (or opted-into) a lawsuit against KABLELINK alleging claims for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). See Egidio Spagnolo v. KableLink Communications, LLC, Case No. 8:11-CV-2197-MSS-EAJ. Forty (40) other contractors filed consents to opt into the case, and the Court conditionally certified the class.

1.2     The parties participated in a settlement Conference before United States Magistrate Judge Anthony E. Porcelli on December 21, 2012. Representing the Plaintiff and opt-in Plaintiffs was a committee of class representatives who had full authority of all other opt-in Plaintiffs to resolve the case in its entirety. During the conference, the case was resolved as stated on the record by Judge Porcelli. The Court initialed a schedule containing the amounts offered and accepted for each Plaintiff / opt-in Plaintiff in full compromise of any and all FLSA claims that each Plaintiff / Opt-in Plaintiff may have against KABLELINK (including, but not limited to, any claims for alleged unpaid wages of any kind, liquidated damages and attorneys' fees and costs). During the settlement conference, the issue of attorneys' fees and costs for the entire case was resolved as noted in paragraph 2.5 below --- **REDACTED**
--- **REDACTED** ---   --- **REDACTED** ---   --- **REDACTED** ---   --- **REDACTED** ---
--- **REDACTED** ---   --- **REDACTED** ---   --- **REDACTED** ---   --- **REDACTED** ---
--- **REDACTED** ---   --- **REDACTED** ---   --- **REDACTED** ---   --- **REDACTED** ---
--- **REDACTED** ---   --- **REDACTED** ---   --- **REDACTED** ---   --- **REDACTED** ---
--- **REDACTED** ---   --- **REDACTED** ---   --- **REDACTED** ---   --- **REDACTED** ---
--- **REDACTED** ---   --- **REDACTED** ---   --- **REDACTED** ---   --- **REDACTED** ---

The parties have agreed to submit this settlement to the Court for approval under seal and/or *in camera*. The Court has approved an *in camera* review by Judge Porcelli. See [Dkt. 75]. Upon Court approval, a settlement check for each Plaintiff and opt-in Plaintiff will be delivered to Plaintiff's counsel's office provided that specific Plaintiff (or opt-in Plaintiff) has executed a Settlement, Release and Waiver of Claims Agreement and delivered same to KABLELINK's counsel's office. That is, after a Plaintiff / Opt-in Plaintiff has executed a Settlement, Release and Waiver of Claims Agreement and it is delivered to counsel for KABLELINK, his check will be processed and sent to Plaintiff's counsel. Any Plaintiff / Opt-in Plaintiff who does not execute a Settlement, Release and Waiver of Claims Agreement will not receive a check.

_E.A_
ABRAHANTE

_T.G._
KABLELINK

1.3   KABLELINK denies any and all allegations of wrongdoing, liability or fault. To compromise, settle and resolve their differences without admitting the validity of or any liability for the claims asserted by ABRAHANTE against KABLELINK, the parties have elected to voluntarily enter into this Agreement. ABRAHANTE agrees that neither this Agreement nor the furnishing of any consideration under this Agreement shall be construed or interpreted as an admission of any wrongdoing, unlawful conduct, fault or liability by KABLELINK. *Moreover, by entering into this Agreement, KABLELINK does not waive its position that ABRAHANTE was an independent contractor for KABLELINK. Further, KABLELINK is not required to change its method of compensation of its contactors.*

1.4   It is the desire of all parties to fully and finally settle and resolve any and all actual and potential FLSA claims that ABRAHANTE may have against KABLELINK and/or the other released persons or entities (as defined herein). Accordingly, without admitting liability, the parties have reached this agreement and compromise after considering the expense and uncertainty of future proceedings, arbitration, litigation, trials, and appeals, and with the desire of resolving all of ABRAHANTE's pending or potential FLSA claims in their entirety, including the above-referenced allegations.

1.5   In consideration of these General Recitals & Representations (which are incorporated herein) and the terms, conditions, promises, covenants, releases and waivers contained in this Agreement, the parties, intending to be legally bound, agree as follows:

### Section II – Release & Payment

2.1   **Release and Waiver of FLSA Claims.** ABRAHANTE knowingly and voluntarily does hereby release and waive any and all FLSA claims and actions against KABLELINK that he may now have against KABLELINK regardless of whether the claims are known or unknown, accrued or unaccrued, or discovered or not yet discovered. This release and waiver specifically includes any kind of claim arising under the Fair Labor Standards Act, as amended, including, but not limited to, claims for alleged unpaid overtime, minimum wages, liquidated damages, injunctive relief, and attorneys' fees, costs, or other expenses. However, this Agreement does not waive rights or claims that may arise after the date the waiver is executed. *Thus, this Agreement constitutes a full and final bar to any and all FLSA claims of any type that ABRAHANTE may have against KABLELINK.*

2.2   **Dismissal of Claims / Court Approval.** With respect to the matter referenced in paragraph 1.1 above, ABRAHANTE agrees to submit this settlement to the Court for approval *in camera* and/or under seal in order to have the case dismissed with prejudice.

2.3   **Covenant Not to Sue.** ABRAHANTE agrees that he will not sue KABLELINK concerning any FLSA claim that he might now have against KABLELINK.

2.4   **Complete Bar to FLSA Recovery.** ABRAHANTE agrees that with respect to the FLSA claims that he is waiving herein, he is waiving not only his right to recover money or other relief in any action that he might institute, but also that he is waiving any right to recover money or other relief in any

*R A*
_____
ABRAHANTE

*T. G.*
_____
KABLELINK

action that might be brought on his behalf by any other person, entity, or agency, including but not limited to the United States Department of Labor.

2.5    **Consideration and Payment.**  In exchange for: (1) ABRAHANTE's release and waiver of any and all FLSA claims (including those for attorneys' fees and costs) against KABLELINK; and (2) all other promises ABRAHANTE has made herein, KABLELINK agrees to pay to ABRAHANTE the total

| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |

all Plaintiffs and opt-in Plaintiffs, including ABRAHANTE).  A check for the payment of the attorney's fees and costs will also be sent to Plaintiffs' counsel within thirty (30) days of Court approval and execution of this Agreement.  If approved by the Court, and after the executed original of this Agreement is returned to counsel for KABLELINK, the checks will be delivered to: Chris Gray, Esquire, Florin Roebig, P.A., 777 Alderman Road, Palm Harbor, Florida 34683.  All aspects of this Agreement are contingent upon the Court's approval of this Agreement and the dismissal of the lawsuit referenced in paragraph 1.1 above with prejudice.  For these settlement sums, 1099's will be issued by KABLELINK or its accountant as appropriate.  The Court shall retain jurisdiction over this matter to enforce the terms of this settlement.

2.6    **Consideration is Adequate, Ample and All Inclusive:**  ABRAHANTE agrees and acknowledges that the sums paid to him (or on his behalf) under this Agreement constitute adequate and ample consideration for this Agreement and for his obligations hereunder.  ABRAHANTE understands and agrees that the sums paid to him under this Agreement is a benefit that ABRAHANTE is not already entitled to receive and which he would not receive but for his execution of this Agreement.  *ABRAHANTE acknowledges that the benefit (consideration) afforded to him under this Agreement includes all costs and attorneys' fees and is all that he is entitled to receive from KABLELINK as settlement of any and all FLSA claims of any kind that he has or may have against KABLELINK, including any claims which ABRAHANTE has raised or alleged in this matter (or could have raised).  ABRAHANTE agrees that all sums paid pursuant to this Agreement represent full compensation for all hours worked and claimed. ABRAHANTE represents that no other wages, overtime, compensation, benefits or other amounts are due or owing to him or his company.*

### Section III – Confidentiality, No Encouragement of Claims & No Disparagement

3.1    **Confidentiality.**  Despite the fact that this Agreement might be made part of the Court record, ABRAHANTE agrees and understands that the circumstances surrounding this lawsuit, his services to KABLELINK, and this Agreement are strictly and absolutely confidential.  Notwithstanding any notations or filings in the judicial record, ABRAHANTE promises that he will not disclose the fact of or terms of this Agreement to anyone, unless ordered to do so by a court of competent jurisdiction.  As is the case with all other provisions of this Agreement, Confidentiality is a material condition of this Agreement.  ABRAHANTE agrees not to disclose or discuss this Agreement, the circumstances related thereto, or any information regarding the existence or substance of this Agreement to anyone except to an

_RA_
ABRAHANTE

_T.G._
KABLELINK

attorney and accountant with whom he chooses to consult regarding the execution of this Agreement. ABRAHANTE also agrees not to discuss his prior relationship with KABLELINK or any matters related to KABLELINK.

**3.2   No Encouragement of Claims or Litigation.** ABRAHANTE will not encourage, counsel or advise any person to file or bring any type of claim against KABLELINK.

**3.3   No Disparagement.** ABRAHANTE agrees not to disparage KABLELINK to any person or entity. ABRAHANTE agrees that he will not say anything that would adversely affect the reputation or business interests of KABLELINK. ABRAHANTE agrees that neither he nor his representatives will make any disparaging or defamatory or untrue remarks to any third-party concerning KABLELINK or any of its employees, officers or agents, or services. Such third-parties include, but are not limited to, the press and public media (*i.e.*, any employees or agents of newspapers, television stations, radio stations or other media), any organizations or associations, any Internet websites, "home pages," "blogs," "chat-rooms," "MySpace pages," "Facebook pages," or KABLELINK's former, current or prospective employees or service providers. ABRAHANTE agrees that any breach or threatened breach of this non-disparagement provision would cause irreparable harm to KABLELINK and that its remedies at law or in damages would be inadequate to remedy such a breach or threatened breach, and that this non-disparagement provision may be enforced by way of a restraining order and/or injunction in addition to any other remedies which may be available at law or in equity.

## Section IV – General Provisions

**4.1   Encouragement to Consult Attorney / Time to Consider Agreement.** ABRAHANTE acknowledges that he has consulted an attorney before signing this Agreement. ABRAHANTE also acknowledges that he was given a reasonable period of time within which to review and consider this Agreement before signing it, and that he understands each term of the Agreement and his obligations hereunder.

**4.2   Breach of Agreement.** ABRAHANTE agrees that if he were to breach any of the promises set forth in this Agreement, KABLELINK shall have the right to seek recovery of any and all payments made to ABRAHANTE under this Agreement, as well as to seek any other damages incurred. In addition, should ABRAHANTE institute a lawsuit or cause a lawsuit to be instituted against KABLELINK based upon any claims that he has released and waived in this Agreement, ABRAHANTE shall pay all costs and attorneys' fees incurred by KABLELINK in defending against any such claim.

**4.3   Files and References.** ABRAHANTE agrees that KABLELINK is not under any obligation to provide any files or records to any other person or entity related to services provided by ABRAHANTE to KABLELINK. ABRAHANTE agrees that KABLELINK is under no obligation to provide any type of personal or professional reference to any person or entity. However, if requested by some third party, KABLELINK will provide to that person/entity (with ABRAHANTE's consent), a confirmation of the dates of service performed for KABLELINK, sums paid to ABRAHANTE for his services rendered, and the nature of the service performed by ABRAHANTE for KABLELINK.

_____
ABRAHANTE

_____
KABLELINK

**4.4    Subpoena for Deposition, Records or Other Information:**  Should ABRAHANTE be served with a subpoena for deposition or documents or information related to this litigation or Agreement, ABRAHANTE and/or his counsel shall: (1) immediately contact KABLELINK or its counsel to notify them in writing of the receipt of such a subpoena; (2) provide KABLELINK or its counsel with a copy of the subpoena; (3) provide KABLELINK or its counsel with a copy of all documents or a list of information that ABRAHANTE considers to be responsive to the subpoena; (4) allow KABLELINK or its counsel twenty (20) days to respond to the subpoena and/or to obtain a protective order before producing any such information or documents; and (5) notify KABLELINK or its counsel at least five (5) business days in advance of its intent to provide any subpoenaed documents or to appear for any deposition.

**4.5    Return of Documents and Property.**  Along with the executed copy of this Agreement, ABRAHANTE agrees to return to KABLELINK any and all property or documents belonging to KABLELINK, including any confidential documents produced to ABRAHANTE during the course of this litigation.

**4.6    Tax Implications of Settlement.**  ABRAHANTE agrees and acknowledges that he bears the sole responsibility for paying any and all applicable federal, state or local taxes (if any are owing) under this Agreement.   ABRAHANTE agrees to hold KABLELINK harmless and indemnify KABLELINK for any tax liability, interest, and/or penalties arising out of ABRAHANTE's failure to pay any taxes that ABRAHANTE is obligated to pay.    KABLELINK maintains its position that ABRAHANTE was an independent contractor.  Accordingly, no tax withholding is being done on the sums paid under this Agreement.

**4.7    Effective Date.**  This Agreement becomes effective and enforceable upon full execution of the Agreement.

**4.8    Amendment.**  This Agreement may not be amended except by written agreement signed by KABLELINK and ABRAHANTE.

**4.9    Headings.**  The headings and other captions in this Agreement are for convenience and reference only and shall not be used in interpreting, construing or enforcing any of the provisions of this Agreement or to define or limit the scope of any paragraph of this Agreement.

**4.10    Governing Law, Severability, Interpretation and Construction.**  This Agreement shall be governed and construed in accordance with the laws of the State of Florida.  The paragraphs and provisions of this Agreement are severable; if any paragraph or provision is found to be unenforceable, the remaining paragraphs and provisions will remain in full effect.  If any provision of this Agreement is declared illegal or unenforceable by an arbitrator or court of competent jurisdiction, and if it cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.  At its option, KABLELINK shall have the right (where permitted by law) to seek to recoup its attorneys' fees and costs incurred in this litigation under this Agreement if this Agreement (or any part thereof) is alleged by ABRAHANTE to be unenforceable.  The parties hereto acknowledge that this Agreement is a collaborative effort by the attorneys for the parties and that, as such, no provision of this Agreement shall be more strictly construed against one party as the draftsperson thereof.


_R.A_
ABRAHANTE

_T.G._
KABLELINK

**4.11    No Use of Document as Evidence.**  This Agreement may only be used as evidence in a lawsuit or arbitration proceeding alleging a breach of this Agreement or as a defense to any lawsuit brought by any party.  Other than this exception, this Agreement will not be introduced as evidence in any other proceeding or in any other lawsuit to suggest any wrongdoing, liability or fault of KABLELINK.

**4.12    Arbitration of Disputes.**  In the event of a dispute as to the interpretation, enforcement, application or violation of this Agreement, it is understood and agreed that such dispute shall be submitted to binding arbitration.

### Section V – Representations & Warranties

**5.1    Capacity of the Parties.**  ABRAHANTE represents and warrants to KABLELINK that he has the full power, capacity, and authority to enter into this Agreement.  ABRAHANTE also represents and warrants that no portion of any claim, right, demand, action, or cause of action that ABRAHANTE has or might have had arising out of the acts, events, transactions, and occurrences referred to herein have been assigned, transferred, or conveyed to any person not a party to this Agreement, by way of subrogation, operation of law, or otherwise, and that no releases or settlement agreements are necessary or need to be obtained from any other person or entity to release and discharge completely any of ABRAHANTE's claims released in this Agreement.

**5.2    Entire Agreement.**  This Agreement sets forth the entire agreement between ABRAHANTE and KABLELINK related to the release and waiver of his FLSA claims.  This Agreement shall not affect the existence or enforceability of any prior independent contractor agreements or any restrictive covenant agreements previously in place between ABRAHANTE and KABLELINK, including, but not limited to those regarding confidential information, non-disclosure, non-solicitation, or non-competition.  ABRAHANTE acknowledges that he has not relied on any representations, promises, or agreements of any kind that may have been made to him in connection with his decision to sign this Agreement, except for those expressly set forth in this Agreement.

**5.3    Binding on Plaintiff.**  ABRAHANTE represents and warrants that he understands that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, this Agreement will remain binding and effective and the parties expressly accept and assume the risk of such possible differences and agree that this Agreement shall remain binding and effective, notwithstanding such potential differences.

**5.4    Full and Final Release of FLSA Claims.**  ABRAHANTE represents and warrants to KABLELINK that he understands and agrees that this Agreement shall act as a full and final release of all FLSA claims of every nature and kind whatsoever that have arisen, or that could have arisen between him and KABLELINK, whether such claims are currently known or unknown, and whether they were foreseeable or unforeseeable.

**5.5    Recitals Incorporated.**  All of the recitals and representations described above or referred to in this Agreement are herein incorporated by reference and specifically made a part of this Agreement, and the same are acknowledged as having been relied upon by the parties.

_R.A_
ABRAHANTE

_T.G._
KABLELINK

5.6    **Counterparts.**  This Agreement may be executed in counterparts.  A photocopy, digital image, or facsimile of this Agreement shall be binding and fully admissible as an original for purposes of this lawsuit or enforcing this Agreement.

HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN, ABRAHANTE FREELY AND KNOWINGLY, AND AFTER DUE REFLECTION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE KABLELINK OF ANY AND ALL FLSA CLAIMS HE NOW HAS, HAD, OR MAY HAVE AGAINST KABLELINK.  IN WITNESS WHEREOF, ABRAHANTE AND KABLELINK HAVE EXECUTED THIS AGREEMENT. ABRAHANTE KNOWINGLY AND VOLUNTARILY EXECUTES THIS WAIVER ON HIS OWN BEHALF AND ALSO ON BEHALF OF HIS HEIRS, AGENTS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS THAT HE MIGHT HAVE NOW OR IN THE FUTURE.  ABRAHANTE SPECIFICALLY ACKNOWLEDGES THAT HE HAS READ THIS AGREEMENT AND THAT HE UNDERSTANDS THE TERMS AND CONDITIONS OF THIS AGREEMENT.

| ROLAND ABRAHANTE | KABLELINK COMMUNICATIONS, LLC |
|---|---|
| By: _Rolando Abrahante_ | By: _____ |
| Dated: _2 - 22 - 13_ | Dated: _3/13/13_ |

_RA_
ABRAHANTE

_T.G._
KABLELINK

## SETTLEMENT, RELEASE AND WAIVER OF FLSA CLAIMS AGREEMENT

This Settlement, Release and Waiver of FLSA Claims Agreement ("Agreement") is entered into between, Plaintiff / Opt-in Plaintiff, LARRY ACRIDGE, including any company or entity that is owned, operated or controlled by LARRY ACRIDGE (all collectively referred to herein as "ACRIDGE") and Defendant, KABLELINK COMMUNICATIONS, LLC ("KABLELINK"). This Agreement shall at all times include and protect KABLELINK (and all of KABLELINK's related domestic and foreign business entities, affiliated entities, corporations, partnerships, limited liability companies, clients, insurers, and subsidiaries) as well as all current and former managers, directors, officers, owners, shareholders, partners, principals, members, board members, employees, clients, assigns and successors in interest, representatives, agents, attorneys, and insurers or reinsurers of KABLELINK and any persons or entities referred to above, both in their representative and individual capacities. All references to KABLELINK expressly include all of the aforementioned individuals, Defendant, and business entities, including any successor corporations or business entities.

### Section I – General Recitals & Representations

1.1    ACRIDGE has filed (or opted-into) a lawsuit against KABLELINK alleging claims for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). See Egidio Spagnolo v. KableLink Communications, LLC, Case No. 8:11-CV-2197-MSS-EAJ. Forty (40) other contractors filed consents to opt into the case, and the Court conditionally certified the class.

1.2    The parties participated in a settlement Conference before United States Magistrate Judge Anthony E. Porcelli on December 21, 2012. Representing the Plaintiff and opt-in Plaintiffs was a committee of class representatives who had full authority of all other opt-in Plaintiffs to resolve the case in its entirety. During the conference, the case was resolved as stated on the record by Judge Porcelli. The Court initialed a schedule containing the amounts offered and accepted for each Plaintiff / opt-in Plaintiff in full compromise of any and all FLSA claims that each Plaintiff / Opt-in Plaintiff may have against KABLELINK (including, but not limited to, any claims for alleged unpaid wages of any kind, liquidated damages and attorneys' fees and costs). During the settlement conference, the issue of attorneys' fees and costs for the entire case was resolved as noted in paragraph 2.5 below --- REDACTED

--- REDACTED ---    --- REDACTED ---    --- REDACTED ---    --- REDACTED ---
--- REDACTED ---    --- REDACTED ---    --- REDACTED ---    --- REDACTED ---
--- REDACTED ---    --- REDACTED ---    --- REDACTED ---    --- REDACTED ---
--- REDACTED ---    --- REDACTED ---    --- REDACTED ---    --- REDACTED ---
--- REDACTED ---    --- REDACTED ---    --- REDACTED ---    --- REDACTED ---

The parties have agreed to submit this settlement to the Court for approval under seal and/or *in camera*. The Court has approved an *in camera* review by Judge Porcelli. See [Dkt. 75]. Upon Court approval, a settlement check for each Plaintiff and opt-in Plaintiff will be delivered to Plaintiff's counsel's office provided that the specific Plaintiff (or opt-in Plaintiff) has executed a Settlement, Release and Waiver of Claims Agreement and delivered same to KABLELINK's counsel's office. That is, after a Plaintiff / Opt-in Plaintiff has executed a Settlement, Release and Waiver of Claims Agreement and it is delivered to counsel for KABLELINK, his check will be processed and sent to Plaintiff's counsel. Any Plaintiff / Opt-in Plaintiff who does not execute a Settlement, Release and Waiver of Claims Agreement will not receive a check.

ACRIDGE

T. C.
KABLELINK

**1.3**   KABLELINK denies any and all allegations of wrongdoing, liability or fault.   To compromise, settle and resolve their differences without admitting the validity of or any liability for the claims asserted by ACRIDGE against KABLELINK, the parties have elected to voluntarily enter into this Agreement.   ACRIDGE agrees that neither this Agreement nor the furnishing of any consideration under this Agreement shall be construed or interpreted as an admission of any wrongdoing, unlawful conduct, fault or liability by KABLELINK.   *Moreover, by entering into this Agreement, KABLELINK does not waive its position that ACRIDGE was an independent contractor for KABLELINK.  Further, KABLELINK is not required to change its method of compensation of its contactors.*

**1.4**   It is the desire of all parties to fully and finally settle and resolve any and all actual and potential FLSA claims that ACRIDGE may have against KABLELINK and/or the other released persons or entities (as defined herein).   Accordingly, without admitting liability, the parties have reached this agreement and compromise after considering the expense and uncertainty of future proceedings, arbitration, litigation, trials, and appeals, and with the desire of resolving all of ACRIDGE's pending or potential FLSA claims in their entirety, including the above-referenced allegations.

**1.5**   In consideration of these General Recitals & Representations (which are incorporated herein) and the terms, conditions, promises, covenants, releases and waivers contained in this Agreement, the parties, intending to be legally bound, agree as follows:

### Section II – Release & Payment

**2.1**   **Release and Waiver of FLSA Claims.**   ACRIDGE knowingly and voluntarily does hereby release and waive any and all FLSA claims and actions against KABLELINK that he may now have against KABLELINK regardless of whether the claims are known or unknown, accrued or unaccrued, or discovered or not yet discovered.   This release and waiver specifically includes any kind of claim arising under the Fair Labor Standards Act, as amended, including, but not limited to, claims for alleged unpaid overtime, minimum wages, liquidated damages, injunctive relief, and attorneys' fees, costs, or other expenses.   However, this Agreement does not waive rights or claims that may arise after the date the waiver is executed.   *Thus, this Agreement constitutes a full and final bar to any and all FLSA claims of any type that ACRIDGE may have against KABLELINK.*

**2.2**   **Dismissal of Claims / Court Approval.**   With respect to the matter referenced in paragraph 1.1 above, ACRIDGE agrees to submit this settlement to the Court for approval *in camera* and/or under seal in order to have the case dismissed with prejudice.

**2.3**   **Covenant Not to Sue.**   ACRIDGE agrees that he will not sue KABLELINK concerning any FLSA claim that he might now have against KABLELINK.

**2.4**   **Complete Bar to FLSA Recovery.**   ACRIDGE agrees that with respect to the FLSA claims that he is waiving herein, he is waiving not only his right to recover money or other relief in any action that he might institute, but also that he is waiving any right to recover money or other relief in any action that might be brought on his behalf by any other person, entity, or agency, including but not limited to the United States Department of Labor.

ACRIDGE

KABLELINK

Page 2 of 7

**2.5     Consideration and Payment.** In exchange for: (1) ACRIDGE's release and waiver of any and all FLSA claims (including those for attorneys' fees and costs) against KABLELINK; and (2) all other promises ACRIDGE has made herein. KABLELINK agrees to pay to ACRIDGE the total collective

| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
|---|---|---|---|
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |

(which sum is attributable to all Plaintiffs and opt-in Plaintiffs, including ACRIDGE). A check for the payment of the attorney's fees and costs will also be sent to Plaintiffs' counsel within thirty (30) days of Court approval and execution of this Agreement. If approved by the Court, and after the executed original of this Agreement is returned to counsel for KABLELINK, the checks will be delivered to: Chris Gray, Esquire, Florin Roebig, P.A., 777 Alderman Road, Palm Harbor, Florida 34683. All aspects of this Agreement are contingent upon the Court's approval of this Agreement and the dismissal of the lawsuit referenced in paragraph 1.1 above with prejudice. For these settlement sums, 1099's will be issued by KABLELINK or its accountant as appropriate. The Court shall retain jurisdiction over this matter to enforce the terms of this settlement.

**2.6     Consideration is Adequate, Ample and All Inclusive:**    ACRIDGE agrees and acknowledges that the sums paid to him (or on his behalf) under this Agreement constitute adequate and ample consideration for this Agreement and for his obligations hereunder. ACRIDGE understands and agrees that the sums paid to him under this Agreement is a benefit that ACRIDGE is not already entitled to receive and which he would not receive but for his execution of this Agreement. *ACRIDGE acknowledges that the benefit (consideration) afforded to him under this Agreement includes all costs and attorneys' fees and is all that he is entitled to receive from KABLELINK as settlement of any and all FLSA claims of any kind that he has or may have against KABLELINK, including any claims which ACRIDGE has raised or alleged in this matter (or could have raised). ACRIDGE agrees that all sums paid pursuant to this Agreement represent full compensation for all hours worked and claimed. ACRIDGE represents that no other wages, overtime, compensation, benefits or other amounts are due or owing to him or his company.*

### Section III – Confidentiality, No Encouragement of Claims & No Disparagement

**3.1     Confidentiality.** Despite the fact that this Agreement might be made part of the Court record, ACRIDGE agrees and understands that the circumstances surrounding this lawsuit, his services to KABLELINK, and this Agreement are strictly and absolutely confidential. Notwithstanding any notations or filings in the judicial record, ACRIDGE promises that he will not disclose the fact of or terms of this Agreement to anyone, unless ordered to do so by a court of competent jurisdiction. As is the case with all other provisions of this Agreement, Confidentiality is a material condition of this Agreement. ACRIDGE agrees not to disclose or discuss this Agreement, the circumstances related thereto, or any information regarding the existence or substance of this Agreement to anyone except to an attorney and accountant

ACRIDGE                                                                              T. G.
                                                                                    KABLELINK

with whom he chooses to consult regarding the execution of this Agreement. ACRIDGE also agrees not to discuss his prior relationship with KABLELINK or any matters related to KABLELINK.

**3.2     No Encouragement of Claims or Litigation.** ACRIDGE will not encourage, counsel or advise any person to file or bring any type of claim against KABLELINK.

**3.3     No Disparagement.** ACRIDGE agrees not to disparage KABLELINK to any person or entity. ACRIDGE agrees that he will not say anything that would adversely affect the reputation or business interests of KABLELINK. ACRIDGE agrees that neither he nor his representatives will make any disparaging or defamatory or untrue remarks to any third-party concerning KABLELINK or any of its employees, officers or agents, or services. Such third-parties include, but are not limited to, the press and public media (*i.e.,* any employees or agents of newspapers, television stations, radio stations or other media), any organizations or associations, any Internet websites, "home pages," "blogs," "chat-rooms," "MySpace pages," "Facebook pages," or KABLELINK's former, current or prospective employees or service providers. ACRIDGE agrees that any breach or threatened breach of this non-disparagement provision would cause irreparable harm to KABLELINK and that its remedies at law or in damages would be inadequate to remedy such a breach or threatened breach, and that this non-disparagement provision may be enforced by way of a restraining order and/or injunction in addition to any other remedies which may be available at law or in equity.

## Section IV – General Provisions

**4.1     Encouragement to Consult Attorney / Time to Consider Agreement.** ACRIDGE acknowledges that he has consulted an attorney before signing this Agreement. ACRIDGE also acknowledges that he was given a reasonable period of time within which to review and consider this Agreement before signing it, and that he understands each term of the Agreement and his obligations hereunder.

**4.2     Breach of Agreement.** ACRIDGE agrees that if he were to breach any of the promises set forth in this Agreement, KABLELINK shall have the right to seek recovery of any and all payments made to ACRIDGE under this Agreement, as well as to seek any other damages incurred. In addition, should ACRIDGE institute a lawsuit or cause a lawsuit to be instituted against KABLELINK based upon any claims that he has released and waived in this Agreement, ACRIDGE shall pay all costs and attorneys' fees incurred by KABLELINK in defending against any such claim.

**4.3     Files and References.** ACRIDGE agrees that KABLELINK is not under any obligation to provide any files or records to any other person or entity related to services provided by ACRIDGE to KABLELINK. ACRIDGE agrees that KABLELINK is under no obligation to provide any type of personal or professional reference to any person or entity. However, if requested by some third party, KABLELINK will provide to that person/entity (with ACRIDGE's consent), a confirmation of the dates of service performed for KABLELINK, sums paid to ACRIDGE for his services rendered, and the nature of the service performed by ACRIDGE for KABLELINK.

**4.4     Subpoena for Deposition, Records or Other Information:** Should ACRIDGE be served with a subpoena for deposition or documents or information related to this litigation or Agreement,

ACRIDGE                                                                    KABLELINK

ACRIDGE and/or his counsel shall: (1) immediately contact KABLELINK or its counsel to notify them in writing of the receipt of such a subpoena; (2) provide KABLELINK or its counsel with a copy of the subpoena; (3) provide KABLELINK or its counsel with a copy of all documents or a list of information that ACRIDGE considers to be responsive to the subpoena; (4) allow KABLELINK or its counsel twenty (20) days to respond to the subpoena and/or to obtain a protective order before producing any such information or documents; and (5) notify KABLELINK or its counsel at least five (5) business days in advance of its intent to provide any subpoenaed documents or to appear for any deposition.

 **4.5 Return of Documents and Property.** Along with the executed copy of this Agreement, ACRIDGE agrees to return to KABLELINK any and all property or documents belonging to KABLELINK, including any confidential documents produced to ACRIDGE during the course of this litigation.

 **4.6 Tax Implications of Settlement.** ACRIDGE agrees and acknowledges that he bears the sole responsibility for paying any and all applicable federal, state or local taxes (if any are owing) under this Agreement. ACRIDGE agrees to hold KABLELINK harmless and indemnify KABLELINK for any tax liability, interest, and/or penalties arising out of ACRIDGE's failure to pay any taxes that ACRIDGE is obligated to pay. KABLELINK maintains its position that ACRIDGE was an independent contractor. Accordingly, no tax withholding is being done on the sums paid under this Agreement.

 **4.7 Effective Date.** This Agreement becomes effective and enforceable upon full execution of the Agreement.

 **4.8 Amendment.** This Agreement may not be amended except by written agreement signed by KABLELINK and ACRIDGE.

 **4.9 Headings.** The headings and other captions in this Agreement are for convenience and reference only and shall not be used in interpreting, construing or enforcing any of the provisions of this Agreement or to define or limit the scope of any paragraph of this Agreement.

 **4.10 Governing Law, Severability, Interpretation and Construction.** This Agreement shall be governed and construed in accordance with the laws of the State of Florida. The paragraphs and provisions of this Agreement are severable; if any paragraph or provision is found to be unenforceable, the remaining paragraphs and provisions will remain in full effect. If any provision of this Agreement is declared illegal or unenforceable by an arbitrator or court of competent jurisdiction, and if it cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. At its option, KABLELINK shall have the right (where permitted by law) to seek to recoup its attorneys' fees and costs incurred in this litigation under this Agreement if this Agreement (or any part thereof) is alleged by ACRIDGE to be unenforceable. The parties hereto acknowledge that this Agreement is a collaborative effort by the attorneys for the parties and that, as such, no provision of this Agreement shall be more strictly construed against one party as the draftsperson thereof.

 **4.11 No Use of Document as Evidence.** This Agreement may only be used as evidence in a lawsuit or arbitration proceeding alleging a breach of this Agreement or as a defense to any lawsuit

ACRIDGE

KABLELINK

brought by any party. Other than this exception, this Agreement will not be introduced as evidence in any other proceeding or in any other lawsuit to suggest any wrongdoing, liability or fault of KABLELINK.

**4.12    Arbitration of Disputes.**  In the event of a dispute as to the interpretation, enforcement, application or violation of this Agreement, it is understood and agreed that such dispute shall be submitted to binding arbitration.

## Section V – Representations & Warranties

**5.1    Capacity of the Parties.**  ACRIDGE represents and warrants to KABLELINK that he has the full power, capacity, and authority to enter into this Agreement.  ACRIDGE also represents and warrants that no portion of any claim, right, demand, action, or cause of action that ACRIDGE has or might have had arising out of the acts, events, transactions, and occurrences referred to herein have been assigned, transferred, or conveyed to any person not a party to this Agreement, by way of subrogation, operation of law, or otherwise, and that no releases or settlement agreements are necessary or need to be obtained from any other person or entity to release and discharge completely any of ACRIDGE's claims released in this Agreement.

**5.2    Entire Agreement.**  This Agreement sets forth the entire agreement between ACRIDGE and KABLELINK related to the release and waiver of his FLSA claims.  This Agreement shall not affect the existence or enforceability of any prior independent contractor agreements or any restrictive covenant agreements previously in place between ACRIDGE and KABLELINK, including, but not limited to those regarding confidential information, non-disclosure, non-solicitation, or non-competition.  ACRIDGE acknowledges that he has not relied on any representations, promises, or agreements of any kind that may have been made to him in connection with his decision to sign this Agreement, except for those expressly set forth in this Agreement.

**5.3    Binding on Plaintiff.**  ACRIDGE represents and warrants that he understands that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, this Agreement will remain binding and effective and the parties expressly accept and assume the risk of such possible differences and agree that this Agreement shall remain binding and effective, notwithstanding such potential differences.

**5.4    Full and Final Release of FLSA Claims.**  ACRIDGE represents and warrants to KABLELINK that he understands and agrees that this Agreement shall act as a full and final release of all FLSA claims of every nature and kind whatsoever that have arisen, or that could have arisen between him and KABLELINK, whether such claims are currently known or unknown, and whether they were foreseeable or unforeseeable.

**5.5    Recitals Incorporated.**  All of the recitals and representations described above or referred to in this Agreement are herein incorporated by reference and specifically made a part of this Agreement, and the same are acknowledged as having been relied upon by the parties.

ACRIDGE

KABLELINK

**5.6    Counterparts.**  This Agreement may be executed in counterparts.  A photocopy, digital image, or facsimile of this Agreement shall be binding and fully admissible as an original for purposes of this lawsuit or enforcing this Agreement.

HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN, ACRIDGE FREELY AND KNOWINGLY, AND AFTER DUE REFLECTION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE KABLELINK OF ANY AND ALL FLSA CLAIMS HE NOW HAS, HAD, OR MAY HAVE AGAINST KABLELINK.  IN WITNESS WHEREOF, ACRIDGE AND KABLELINK HAVE EXECUTED THIS AGREEMENT.  ACRIDGE KNOWINGLY AND VOLUNTARILY EXECUTES THIS WAIVER ON HIS OWN BEHALF AND ALSO ON BEHALF OF HIS HEIRS, AGENTS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS THAT HE MIGHT HAVE NOW OR IN THE FUTURE.  ACRIDGE SPECIFICALLY ACKNOWLEDGES THAT HE HAS READ THIS AGREEMENT AND THAT HE UNDERSTANDS THE TERMS AND CONDITIONS OF THIS AGREEMENT.

| LARRY ACRIDGE | KABLELINK COMMUNICATIONS, LLC |
|---|---|
| By: _____ | By: _____ |
| Dated: _2-20-2013_ | Dated: _3/13/13_ |

ACRIDGE

KABLELINK

## SETTLEMENT, RELEASE AND WAIVER OF FLSA CLAIMS AGREEMENT

This Settlement, Release and Waiver of FLSA Claims Agreement ("Agreement") is entered into between, Plaintiff / Opt-in Plaintiff, JUAN ACURERO, including any company or entity that is owned, operated or controlled by JUAN ACURERO (all collectively referred to herein as "ACURERO") and Defendant, KABLELINK COMMUNICATIONS, LLC ("KABLELINK"). This Agreement shall at all times include and protect KABLELINK (and all of KABLELINK's related domestic and foreign business entities, affiliated entities, corporations, partnerships, limited liability companies, clients, insurers, and subsidiaries) as well as all current and former managers, directors, officers, owners, shareholders, partners, principals, members, board members, employees, clients, assigns and successors in interest, representatives, agents, attorneys, and insurers or reinsurers of KABLELINK and any persons or entities referred to above, both in their representative and individual capacities. All references to KABLELINK expressly include all of the aforementioned individuals, Defendant, and business entities, including any successor corporations or business entities.

### Section I – General Recitals & Representations

1.1    ACURERO has filed (or opted-into) a lawsuit against KABLELINK alleging claims for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). See Egidio Spagnolo v. KableLink Communications, LLC, Case No. 8:11-CV-2197-MSS-EAJ. Forty (40) other contractors filed consents to opt into the case, and the Court conditionally certified the class.

1.2    The parties participated in a settlement Conference before United States Magistrate Judge Anthony E. Porcelli on December 21, 2012. Representing the Plaintiff and opt-in Plaintiffs was a committee of class representatives who had full authority of all other opt-in Plaintiffs to resolve the case in its entirety. During the conference, the case was resolved as stated on the record by Judge Porcelli. The Court initialed a schedule containing the amounts offered and accepted for each Plaintiff / opt-in Plaintiff in full compromise of any and all FLSA claims that each Plaintiff / Opt-in Plaintiff may have against KABLELINK (including, but not limited to, any claims for alleged unpaid wages of any kind, liquidated damages and attorneys' fees and costs). During the settlement conference, the issue of attorneys' fees and costs for the entire case was resolved as noted in paragraph 2.5 below --- **REDACTED** --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** --- --- **REDACTED** ---

The parties have agreed to submit this settlement to the Court for approval under seal and/or *in camera*. The Court has approved an *in camera* review by Judge Porcelli. See [Dkt. 75]. Upon Court approval, a settlement check for each Plaintiff and opt-in Plaintiff will be delivered to Plaintiff's counsel's office provided that the specific Plaintiff (or opt-in Plaintiff) has executed a Settlement, Release and Waiver of Claims Agreement and delivered same to KABLELINK's counsel's office. That is, after a Plaintiff / Opt-in Plaintiff has executed a Settlement, Release and Waiver of Claims Agreement and it is delivered to counsel for KABLELINK, his check will be processed and sent to Plaintiff's counsel. Any Plaintiff / Opt-in Plaintiff who does not execute a Settlement, Release and Waiver of Claims Agreement will not receive a check.

JCA
ACURERO

T.G.
KABLELINK

1.3    KABLELINK denies any and all allegations of wrongdoing, liability or fault.    To compromise, settle and resolve their differences without admitting the validity of or any liability for the claims asserted by ACURERO against KABLELINK, the parties have elected to voluntarily enter into this Agreement.  ACURERO agrees that neither this Agreement nor the furnishing of any consideration under this Agreement shall be construed or interpreted as an admission of any wrongdoing, unlawful conduct, fault or liability by KABLELINK.  *Moreover, by entering into this Agreement, KABLELINK does not waive its position that ACURERO was an independent contractor for KABLELINK.  Further, KABLELINK is not required to change its method of compensation of its contactors.*

1.4    It is the desire of all parties to fully and finally settle and resolve any and all actual and potential FLSA claims that ACURERO may have against KABLELINK and/or the other released persons or entities (as defined herein).  Accordingly, without admitting liability, the parties have reached this agreement and compromise after considering the expense and uncertainty of future proceedings, arbitration, litigation, trials, and appeals, and with the desire of resolving all of ACURERO's pending or potential FLSA claims in their entirety, including the above-referenced allegations.

1.5    In consideration of these General Recitals & Representations (which are incorporated herein) and the terms, conditions, promises, covenants, releases and waivers contained in this Agreement, the parties, intending to be legally bound, agree as follows:

## Section II – Release & Payment

2.1    **Release and Waiver of FLSA Claims.**  ACURERO knowingly and voluntarily does hereby release and waive any and all FLSA claims and actions against KABLELINK that he may now have against KABLELINK regardless of whether the claims are known or unknown, accrued or unaccrued, or discovered or not yet discovered.  This release and waiver specifically includes any kind of claim arising under the Fair Labor Standards Act, as amended, including, but not limited to, claims for alleged unpaid overtime, minimum wages, liquidated damages, injunctive relief, and attorneys' fees, costs, or other expenses.  However, this Agreement does not waive rights or claims that may arise after the date the waiver is executed.  *Thus, this Agreement constitutes a full and final bar to any and all FLSA claims of any type that ACURERO may have against KABLELINK.*

2.2    **Dismissal of Claims / Court Approval.**  With respect to the matter referenced in paragraph 1.1 above, ACURERO agrees to submit this settlement to the Court for approval *in camera* and/or under seal in order to have the case dismissed with prejudice.

2.3    **Covenant Not to Sue.**  ACURERO agrees that he will not sue KABLELINK concerning any FLSA claim that he might now have against KABLELINK.

2.4    **Complete Bar to FLSA Recovery.**  ACURERO agrees that with respect to the FLSA claims that he is waiving herein, he is waiving not only his right to recover money or other relief in any action that he might institute, but also that he is waiving any right to recover money or other relief in any action that might be brought on his behalf by any other person, entity, or agency, including but not limited to the United States Department of Labor.

JCA

ACURERO

T.G.

KABLELINK

**2.5    Consideration and Payment.**  In exchange for: (1) ACURERO's release and waiver of any and all FLSA claims (including those for attorneys' fees and costs) against KABLELINK; and (2) all other promises ACURERO has made herein, KABLELINK agrees to pay to ACURERO the total

--- REDACTED ---    --- REDACTED ---    --- REDACTED ---    --- REDACTED ---
--- REDACTED ---    --- REDACTED ---    --- REDACTED ---    --- REDACTED ---
--- REDACTED ---    --- REDACTED ---    --- REDACTED ---    --- REDACTED ---
--- REDACTED ---    --- REDACTED ---    --- REDACTED ---    --- REDACTED ---
--- REDACTED ---    --- REDACTED ---    --- REDACTED ---    --- REDACTED ---
--- REDACTED ---    --- REDACTED ---    --- REDACTED ---    --- REDACTED ---

Plaintiffs, including ACURERO).  A check for the payment of the attorney's fees and costs will also be sent to Plaintiffs' counsel within thirty (30) days of Court approval and execution of this Agreement.  If approved by the Court, and after the executed original of this Agreement is returned to counsel for KABLELINK, the checks will be delivered to: Chris Gray, Esquire, Florin Roebig, P.A., 777 Alderman Road, Palm Harbor, Florida  34683.  All aspects of this Agreement are contingent upon the Court's approval of this Agreement and the dismissal of the lawsuit referenced in paragraph 1.1 above with prejudice.  For these settlement sums, 1099's will be issued by KABLELINK or its accountant as appropriate.  The Court shall retain jurisdiction over this matter to enforce the terms of this settlement.

**2.6    Consideration is Adequate, Ample and All Inclusive:**  ACURERO agrees and acknowledges that the sums paid to him (or on his behalf) under this Agreement constitute adequate and ample consideration for this Agreement and for his obligations hereunder.  ACURERO understands and agrees that the sums paid to him under this Agreement is a benefit that ACURERO is not already entitled to receive and which he would not receive but for his execution of this Agreement.  *ACURERO acknowledges that the benefit (consideration) afforded to him under this Agreement includes all costs and attorneys' fees and is all that he is entitled to receive from KABLELINK as settlement of any and all FLSA claims of any kind that he has or may have against KABLELINK, including any claims which ACURERO has raised or alleged in this matter (or could have raised).  ACURERO agrees that all sums paid pursuant to this Agreement represent full compensation for all hours worked and claimed.  ACURERO represents that no other wages, overtime, compensation, benefits or other amounts are due or owing to him or his company.*

## Section III – Confidentiality, No Encouragement of Claims & No Disparagement

**3.1    Confidentiality.**  Despite the fact that this Agreement might be made part of the Court record, ACURERO agrees and understands that the circumstances surrounding this lawsuit, his services to KABLELINK, and this Agreement are strictly and absolutely confidential.  Notwithstanding any notations or filings in the judicial record, ACURERO promises that he will not disclose the fact of or terms of this Agreement to anyone, unless ordered to do so by a court of competent jurisdiction.  As is the case with all other provisions of this Agreement, Confidentiality is a material condition of this Agreement.  ACURERO agrees not to disclose or discuss this Agreement, the circumstances related thereto, or any information regarding the existence or substance of this Agreement to anyone except to an attorney and accountant with whom he chooses to consult regarding the execution of this Agreement.  ACURERO also agrees not to discuss his prior relationship with KABLELINK or any matters related to KABLELINK.

*JCA*
_____
ACURERO

*T.G.*
_____
KABLELINK

**3.2   No Encouragement of Claims or Litigation.** ACURERO will not encourage, counsel or advise any person to file or bring any type of claim against KABLELINK.

**3.3   No Disparagement.** ACURERO agrees not to disparage KABLELINK to any person or entity. ACURERO agrees that he will not say anything that would adversely affect the reputation or business interests of KABLELINK. ACURERO agrees that neither he nor his representatives will make any disparaging or defamatory or untrue remarks to any third-party concerning KABLELINK or any of its employees, officers or agents, or services. Such third-parties include, but are not limited to, the press and public media (*i.e.*, any employees or agents of newspapers, television stations, radio stations or other media), any organizations or associations, any Internet websites, "home pages," "blogs," "chat-rooms," "MySpace pages," "Facebook pages," or KABLELINK's former, current or prospective employees or service providers. ACURERO agrees that any breach or threatened breach of this non-disparagement provision would cause irreparable harm to KABLELINK and that its remedies at law or in damages would be inadequate to remedy such a breach or threatened breach, and that this non-disparagement provision may be enforced by way of a restraining order and/or injunction in addition to any other remedies which may be available at law or in equity.

## Section IV – General Provisions

**4.1   Encouragement to Consult Attorney / Time to Consider Agreement.** ACURERO acknowledges that he has consulted an attorney before signing this Agreement. ACURERO also acknowledges that he was given a reasonable period of time within which to review and consider this Agreement before signing it, and that he understands each term of the Agreement and his obligations hereunder.

**4.2   Breach of Agreement.** ACURERO agrees that if he were to breach any of the promises set forth in this Agreement, KABLELINK shall have the right to seek recovery of any and all payments made to ACURERO under this Agreement, as well as to seek any other damages incurred. In addition, should ACURERO institute a lawsuit or cause a lawsuit to be instituted against KABLELINK based upon any claims that he has released and waived in this Agreement, ACURERO shall pay all costs and attorneys' fees incurred by KABLELINK in defending against any such claim.

**4.3   Files and References.** ACURERO agrees that KABLELINK is not under any obligation to provide any files or records to any other person or entity related to services provided by ACURERO to KABLELINK. ACURERO agrees that KABLELINK is under no obligation to provide any type of personal or professional reference to any person or entity. However, if requested by some third party, KABLELINK will provide to that person/entity (with ACURERO's consent), a confirmation of the dates of service performed for KABLELINK, sums paid to ACURERO for his services rendered, and the nature of the service performed by ACURERO for KABLELINK.

**4.4   Subpoena for Deposition, Records or Other Information:** Should ACURERO be served with a subpoena for deposition or documents or information related to this litigation or Agreement, ACURERO and/or his counsel shall: (1) immediately contact KABLELINK or its counsel to notify them in writing of the receipt of such a subpoena; (2) provide KABLELINK or its counsel with a copy of the subpoena; (3) provide KABLELINK or its counsel with a copy of all documents or a list of information

JCA
_____
ACURERO

T.G.
_____
KABLELINK

that ACURERO considers to be responsive to the subpoena; (4) allow KABLELINK or its counsel twenty (20) days to respond to the subpoena and/or to obtain a protective order before producing any such information or documents; and (5) notify KABLELINK or its counsel at least five (5) business days in advance of its intent to provide any subpoenaed documents or to appear for any deposition.

    **4.5**    **Return of Documents and Property.** Along with the executed copy of this Agreement, ACURERO agrees to return to KABLELINK any and all property or documents belonging to KABLELINK, including any confidential documents produced to ACURERO during the course of this litigation.

    **4.6**    **Tax Implications of Settlement.** ACURERO agrees and acknowledges that he bears the sole responsibility for paying any and all applicable federal, state or local taxes (if any are owing) under this Agreement. ACURERO agrees to hold KABLELINK harmless and indemnify KABLELINK for any tax liability, interest, and/or penalties arising out of ACURERO's failure to pay any taxes that ACURERO is obligated to pay. KABLELINK maintains its position that ACURERO was an independent contractor. Accordingly, no tax withholding is being done on the sums paid under this Agreement.

    **4.7**    **Effective Date.** This Agreement becomes effective and enforceable upon full execution of the Agreement.

    **4.8**    **Amendment.** This Agreement may not be amended except by written agreement signed by KABLELINK and ACURERO.

    **4.9**    **Headings.** The headings and other captions in this Agreement are for convenience and reference only and shall not be used in interpreting, construing or enforcing any of the provisions of this Agreement or to define or limit the scope of any paragraph of this Agreement.

    **4.10**    **Governing Law, Severability, Interpretation and Construction.** This Agreement shall be governed and construed in accordance with the laws of the State of Florida. The paragraphs and provisions of this Agreement are severable; if any paragraph or provision is found to be unenforceable, the remaining paragraphs and provisions will remain in full effect. If any provision of this Agreement is declared illegal or unenforceable by an arbitrator or court of competent jurisdiction, and if it cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. At its option, KABLELINK shall have the right (where permitted by law) to seek to recoup its attorneys' fees and costs incurred in this litigation under this Agreement if this Agreement (or any part thereof) is alleged by ACURERO to be unenforceable. The parties hereto acknowledge that this Agreement is a collaborative effort by the attorneys for the parties and that, as such, no provision of this Agreement shall be more strictly construed against one party as the draftsperson thereof.

    **4.11**    **No Use of Document as Evidence.** This Agreement may only be used as evidence in a lawsuit or arbitration proceeding alleging a breach of this Agreement or as a defense to any lawsuit brought by any party. Other than this exception, this Agreement will not be introduced as evidence in any other proceeding or in any other lawsuit to suggest any wrongdoing, liability or fault of KABLELINK.

JCA
_____
ACURERO

T.G.
_____
KABLELINK

**4.12    Arbitration of Disputes.**  In the event of a dispute as to the interpretation, enforcement, application or violation of this Agreement, it is understood and agreed that such dispute shall be submitted to binding arbitration.

## Section V – Representations & Warranties

**5.1    Capacity of the Parties.**  ACURERO represents and warrants to KABLELINK that he has the full power, capacity, and authority to enter into this Agreement.  ACURERO also represents and warrants that no portion of any claim, right, demand, action, or cause of action that ACURERO has or might have had arising out of the acts, events, transactions, and occurrences referred to herein have been assigned, transferred, or conveyed to any person not a party to this Agreement, by way of subrogation, operation of law, or otherwise, and that no releases or settlement agreements are necessary or need to be obtained from any other person or entity to release and discharge completely any of ACURERO's claims released in this Agreement.

**5.2    Entire Agreement.**  This Agreement sets forth the entire agreement between ACURERO and KABLELINK related to the release and waiver of his FLSA claims.  This Agreement shall not affect the existence or enforceability of any prior independent contractor agreements or any restrictive covenant agreements previously in place between ACURERO and KABLELINK, including, but not limited to those regarding confidential information, non-disclosure, non-solicitation, or non-competition. ACURERO acknowledges that he has not relied on any representations, promises, or agreements of any kind that may have been made to him in connection with his decision to sign this Agreement, except for those expressly set forth in this Agreement.

**5.3    Binding on Plaintiff.**  ACURERO represents and warrants that he understands that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, this Agreement will remain binding and effective and the parties expressly accept and assume the risk of such possible differences and agree that this Agreement shall remain binding and effective, notwithstanding such potential differences.

**5.4    Full and Final Release of FLSA Claims.**  ACURERO represents and warrants to KABLELINK that he understands and agrees that this Agreement shall act as a full and final release of all FLSA claims of every nature and kind whatsoever that have arisen, or that could have arisen between him and KABLELINK, whether such claims are currently known or unknown, and whether they were foreseeable or unforeseeable.

**5.5    Recitals Incorporated.**  All of the recitals and representations described above or referred to in this Agreement are herein incorporated by reference and specifically made a part of this Agreement, and the same are acknowledged as having been relied upon by the parties.

**5.6    Counterparts.**  This Agreement may be executed in counterparts.  A photocopy, digital image, or facsimile of this Agreement shall be binding and fully admissible as an original for purposes of this lawsuit or enforcing this Agreement.

JCA
_____
ACURERO

T.G.
_____
KABLELINK

HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN, ACURERO FREELY AND KNOWINGLY, AND AFTER DUE REFLECTION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE KABLELINK OF ANY AND ALL FLSA CLAIMS HE NOW HAS, HAD, OR MAY HAVE AGAINST KABLELINK. IN WITNESS WHEREOF, ACURERO AND KABLELINK HAVE EXECUTED THIS AGREEMENT. ACURERO KNOWINGLY AND VOLUNTARILY EXECUTES THIS WAIVER ON HIS OWN BEHALF AND ALSO ON BEHALF OF HIS HEIRS, AGENTS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS THAT HE MIGHT HAVE NOW OR IN THE FUTURE. ACURERO SPECIFICALLY ACKNOWLEDGES THAT HE HAS READ THIS AGREEMENT AND THAT HE UNDERSTANDS THE TERMS AND CONDITIONS OF THIS AGREEMENT.

| JUAN ACURERO | KABLELINK COMMUNICATIONS, LLC |
|---|---|
| By: _Juan Acurero_ | By: _____ |
| Dated: 02-21-13 | Dated: 3/13/13 |

ACURERO

KABLELINK

## SETTLEMENT, RELEASE AND WAIVER OF FLSA CLAIMS AGREEMENT

This Settlement, Release and Waiver of FLSA Claims Agreement ("Agreement") is entered into between, Plaintiff / Opt-in Plaintiff, JOHN T. BARNHART, including any company or entity that is owned, operated or controlled by JOHN T. BARNHART (all collectively referred to herein as "BARNHART") and Defendant, KABLELINK COMMUNICATIONS, LLC ("KABLELINK"). This Agreement shall at all times include and protect KABLELINK (and all of KABLELINK's related domestic and foreign business entities, affiliated entities, corporations, partnerships, limited liability companies, clients, insurers, and subsidiaries) as well as all current and former managers, directors, officers, owners, shareholders, partners, principals, members, board members, employees, clients, assigns and successors in interest, representatives, agents, attorneys, and insurers or reinsurers of KABLELINK and any persons or entities referred to above, both in their representative and individual capacities. All references to KABLELINK expressly include all of the aforementioned individuals, Defendant, and business entities, including any successor corporations or business entities.

### Section I – General Recitals & Representations

**1.1**     BARNHART has filed (or opted-into) a lawsuit against KABLELINK alleging claims for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA").   See Egidio Spagnolo v. KableLink Communications, LLC, Case No. 8:11-CV-2197-MSS-EAJ.    Forty (40) other contractors filed consents to opt into the case, and the Court conditionally certified the class.

**1.2**     The parties participated in a settlement Conference before United States Magistrate Judge Anthony E. Porcelli on December 21, 2012. Representing the Plaintiff and opt-in Plaintiffs was a committee of class representatives who had full authority of all other opt-in Plaintiffs to resolve the case in its entirety. During the conference, the case was resolved as stated on the record by Judge Porcelli. The Court initialed a schedule containing the amounts offered and accepted for each Plaintiff / opt-in Plaintiff in full compromise of any and all FLSA claims that each Plaintiff / Opt-in Plaintiff may have against KABLELINK (including, but not limited to, any claims for alleged unpaid wages of any kind, liquidated damages and attorneys' fees and costs). During the settlement conference, the issue of attorneys' fees and costs for the entire case was resolved as noted in paragraph 2.5 below. --- REDACTED ---
--- REDACTED ---   --- REDACTED ---   --- REDACTED ---   --- REDACTED ---   --- REDACTED ---
--- REDACTED ---   --- REDACTED ---   --- REDACTED ---   --- REDACTED ---
--- REDACTED ---   --- REDACTED ---   --- REDACTED ---   --- REDACTED ---
--- REDACTED ---   --- REDACTED ---   --- REDACTED ---   --- REDACTED ---
--- REDACTED ---   --- REDACTED ---   --- REDACTED ---   --- REDACTED ---
--- REDACTED ---   --- REDACTED ---   --- REDACTED ---   --- REDACTED ---

The parties have agreed to submit this settlement to the Court for approval under seal and/or *in camera*. The Court has approved an *in camera* review by Judge Porcelli. See [Dkt. 75]. Upon Court approval, a settlement check for each Plaintiff and opt-in Plaintiff will be delivered to Plaintiff's counsel's office provided that the specific Plaintiff (or opt-in Plaintiff) has executed a Settlement, Release and Waiver of Claims Agreement and delivered same to KABLELINK's counsel's office. That is, after a Plaintiff / Opt-in Plaintiff has executed a Settlement, Release and Waiver of Claims Agreement and it is delivered to counsel for KABLELINK, his check will be processed and sent to Plaintiff's counsel. Any Plaintiff / Opt-in Plaintiff who does not execute a Settlement, Release and Waiver of Claims Agreement will not receive a check.

BARNHART

KABLELINK

1.3     KABLELINK denies any and all allegations of wrongdoing, liability or fault. To compromise, settle and resolve their differences without admitting the validity of or any liability for the claims asserted by BARNHART against KABLELINK, the parties have elected to voluntarily enter into this Agreement. BARNHART agrees that neither this Agreement nor the furnishing of any consideration under this Agreement shall be construed or interpreted by KABLELINK as an admission of any wrongdoing, unlawful conduct and/or liability. *Moreover, by entering into this Agreement, KABLINK does not waive its position that BARNHART was an independent contractor for KABLELINK. Further, KABLELINK is not required to change its method of compensation of its contactors.*

1.4     It is the desire of all parties to fully and finally settle and resolve any and all actual and potential FLSA claims related to the case referenced in 1.1, that BARNHART may have against KABLELINK or other released persons or entities. Accordingly, without admitting liability, the parties have reached this agreement and compromise after considering the expense and uncertainty of future proceedings, litigation, trials and appeals and with the desire of resolving all of BARNHART's pending or potential FLSA claims in their entirety, including the above-referenced allegations.

1.5     In consideration of these General Recitals & Representations (which are incorporated herein) and the terms, conditions, promises, covenants, releases and waivers contained in this Agreement, the parties, intending to be legally bound, agree as follows:

### Section II – Release & Payment

2.1     **Release and Waiver of FLSA Claims.** BARNHART knowingly and voluntarily does hereby release and waive any and all FLSA claims and actions against KABLELINK that he may now have against KABLELINK regardless of whether the claims are known or unknown, accrued or unaccrued, or discovered or not yet discovered. This release and waiver specifically includes any kind of claim arising under the Fair Labor Standards Act, as amended, including, and limited to, claims for alleged unpaid overtime, minimum wages, liquidated damages, injunctive relief, attorneys' fees and costs referenced in 1.1. However, this Agreement does not waive rights or claims that may arise after the date the waiver is executed. *Thus, this Agreement constitutes a full and final bar to any and all FLSA claims of any type BARNHART may have had against KABLELINK.*

2.2     **Dismissal of Claims / Court Approval.** With respect to the matter referenced in paragraph 1.1 above, BARNHART agrees to submit this settlement to the Court for approval *in camera* and/or under seal in order to have the case dismissed with prejudice.

2.3     **Covenant Not to Sue.** BARNHART agrees that he will not sue KABLELINK concerning any FLSA claim that he might now have against KABLELINK.

2.4     **Complete Bar to FLSA Recovery.** BARNHART agrees that with respect to the FLSA claims that he is waiving herein, he is waiving not only his right to recover money or other relief in any action that he might institute, but also that he is waiving any right to recover money or other relief in any action that might be brought on his behalf by any other person, or entity, and including but not limited to the United States Department of Labor.

BARNHART

KABLELINK

**2.5     Consideration and Payment**. In exchange for: (1) BARNHART's release and waiver of any and all FLSA claims (including those for attorneys' fees and costs) against KABLELINK; and (2) all other promises BARNHART has made herein, KABLELINK agrees to pay to BARNHART the total

| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
|---|---|---|---|
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |

(which sum is attributable to all Plaintiffs and opt-in Plaintiffs, including BARNHART). A check for the payment of the attorney's fees and costs will also be sent to Plaintiffs' counsel within thirty (30) days of Court approval and execution of this Agreement. If approved by the Court, and after the executed original of this Agreement is returned to counsel for KABLELINK, the checks will be delivered to: Chris Gray, Esquire, Florin Roebig, P.A., 777 Alderman Road, Palm Harbor, Florida 34683. All aspects of this Agreement are contingent upon the Court's approval of this Agreement and the dismissal of the lawsuit referenced in paragraph 1.1 above with prejudice. For these settlement sums, 1099's will be issued by KABLELINK or its accountant as appropriate. The Court shall retain jurisdiction over this matter to enforce the terms of this settlement.

**2.6     Consideration is Adequate, Ample and All Inclusive:** BARNHART agrees and acknowledges that the sums paid to him (or on his behalf) under this Agreement constitute adequate and ample consideration for this Agreement and for his obligations hereunder. BARNHART understands and agrees that the sums paid to him under this Agreement are for overtime BARNHART is entitled to receive and which he would not receive but for his execution of this Agreement. *BARNHART acknowledges that the benefit (consideration) afforded to him under this Agreement includes all costs and attorneys' fees and is all that he is entitled to receive from KABLELINK as settlement of any and all pending FLSA claims that he currently has against KABLELINK in reference to paragraph 1.1, including any claims which BARNHART has raised in this matter. BARNHART agrees that all sums paid pursuant to this Agreement represent full compensation for all hours worked and claimed. BARNHART represents that no other wages, overtime, compensation, benefits or other amounts are due or owing to him or his company.*

## Section III – Confidentiality, No Encouragement of Claims & No Disparagement

**3.1     Confidentiality**. Despite the fact that this Agreement might be made part of the Court record, BARNHART agrees and understands that the terms and details of the settlement of this lawsuit against KABLELINK in this Agreement are strictly and absolutely confidential. Notwithstanding any notations or filings in the judicial record, BARNHART promises that he will not disclose the terms of this Agreement to anyone, unless ordered to do so by a court of competent jurisdiction. As is the case with all other provisions of this Agreement, Confidentiality is a material condition of this Agreement. BARNHART agrees not to disclose or discuss the terms of this Agreement or any information regarding the substance or payment amounts of this Agreement to anyone except to an attorney and accountant with whom he chooses to consult regarding the execution of this Agreement. BARNHART

BARNHART

KABLELINK

also agrees not to discuss his prior negotiations with KABLELINK or any falsehoods related to KABLELINK.

**3.2    No Encouragement of Claims or Litigation.** BARNHART will not encourage, counsel or advise any person to bring an unsubstantiated claim against KABLELINK.

**3.3    No Disparagement.** BARNHART agrees not to misrepresent KABLELINK to any person or entity. BARNHART agrees that he will not say anything untrue about the business interests of KABLELINK. BARNHART agrees that neither he nor his representatives will make any defamatory remarks that are untrue, to any third-party concerning KABLELINK or any of its employees, officers or agents, or services. Such third-parties include, but are not limited to, the press and public media (*i.e.,* any employees or agents of newspapers, television stations, radio stations or other media), any organizations or associations, any Internet websites, "home pages," "blogs," "chat-rooms," "MySpace pages," "Facebook pages," or KABLELINK's former, current or prospective employees or service providers. BARNHART agrees that any breach or threatened breach of this non-disparagement provision would cause harm to KABLELINK and that its remedies at law or in damages would be adequate to remedy such a breach or threatened breach, and that this provision concerns only untruths and may be enforced by way of a restraining order and/or injunction in addition to any other remedies which may be available at law or in equity.

## Section IV – General Provisions

**4.1    Encouragement to Consult Attorney / Time to Consider Agreement.** BARNHART acknowledges that he has consulted an attorney before signing this Agreement. BARNHART also acknowledges that he was given a reasonable period of time within which to review and consider this Agreement before signing it, and that he understands each term of the Agreement and his obligations hereunder.

**4.2    Breach of Agreement.** BARNHART agrees that if he were to breach any of the promises set forth in this Agreement, KABLELINK shall have the right to seek recovery of any and all payments made to BARNHART under this Agreement, but not to claim any other damages incurred. In addition, should BARNHART institute a lawsuit or cause a lawsuit to be instituted against KABLELINK based upon any claims that he has released and waived in this Agreement, BARNHART shall not pay costs and attorneys' fees incurred by KABLELINK in defending against any such claim.

**4.3    Files and References.** BARNHART agrees that KABLELINK is not under any obligation to provide any files or records to any other person or entity related to services provided by BARNHART to KABLELINK. BARNHART agrees that KABLELINK is under no obligation to provide any type of personal or professional reference to any person or entity. However, if requested by some third party, KABLELINK will provide to that person/entity (with BARNHART's consent), a confirmation of the dates of service performed for KABLELINK, sums paid to BARNHART for his services rendered, and the nature of the service performed by BARNHART for KABLELINK.

**4.4    Subpoena for Deposition, Records or Other Information:** Should BARNHART be served with a subpoena for deposition or documents or information related to this litigation or Agreement,

BARNHART

T. G.
KABLELINK

BARNHART and/or his counsel shall: (1) immediately contact KABLELINK or its counsel to notify them in writing of the receipt of such a subpoena; (2) provide KABLELINK or its counsel with a copy of the subpoena; (3) provide KABLELINK or its counsel with a copy of all documents or a list of information that BARNHART considers to be responsive to the subpoena; (4) allow KABLELINK or its counsel twenty (20) days to respond to the subpoena and/or to obtain a protective order before producing any such information or documents; and (5) notify KABLELINK or its counsel at least five (5) business days in advance of its intent to provide any subpoenaed documents or to appear for any deposition.

**4.5    Return of Documents and Property.** Along with the executed copy of this Agreement, BARNHART agrees to return to KABLELINK any and all documents that may belong to KABLELINK, including any confidential documents produced to BARNHART during the course of this litigation.

**4.6    Tax Implications of Settlement.** BARNHART agrees and acknowledges that he bears the sole responsibility for paying any and all applicable federal, state or local taxes (if any are owing) under this Agreement. BARNHART agrees to hold KABLELINK harmless and indemnify KABLELINK for any tax liability, interest, and/or penalties arising out of BARNHART's failure to pay any taxes that BARNHART is obligated to pay. KABLELINK maintains its position that BARNHART was an independent contractor. Accordingly, no tax withholding is being done on the sums paid under this Agreement.

**4.7    Effective Date.** This Agreement becomes effective and enforceable upon full execution of the Agreement.

**4.8    Amendment.** This Agreement may not be amended except by written agreement signed by KABLELINK and BARNHART.

**4.9    Headings.** The headings and other captions in this Agreement are for convenience and reference only and shall not be used in interpreting, construing or enforcing any of the provisions of this Agreement or to define or limit the scope of any paragraph of this Agreement.

**4.10    Governing Law, Severability, Interpretation and Construction.** This Agreement shall be governed and construed in accordance with the laws of the State of Florida. The paragraphs and provisions of this Agreement are severable; if any paragraph or provision is found to be unenforceable, the remaining paragraphs and provisions will remain in full effect. If any provision of this Agreement is declared illegal or unenforceable by an arbitrator or court of competent jurisdiction, and if it cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. Without option, KABLELINK shall not have the right to seek or to attempt to recoup its attorneys' fees and costs incurred in this litigation under this Agreement if this Agreement (or any part thereof) is alleged by BARNHART to be unenforceable. The parties hereto acknowledge that this Agreement is a collaborative effort by the attorneys for the parties and that, as such, no provision of this Agreement shall be more strictly construed against one party as the draftsperson thereof.

**4.11    No Use of Document as Evidence.** This Agreement may only be used as evidence in a lawsuit or arbitration proceeding alleging a breach of this Agreement or as a defense to any lawsuit

BARNHART                                                    KABLELINK

brought by any party.  Other than this exception, this Agreement will not be introduced as evidence in any other proceeding or in any other lawsuit to suggest any wrongdoing, liability or fault of KABLELINK.

**4.12    Arbitration of Disputes.** In the event of a dispute as to the interpretation, enforcement, application or violation of this Agreement, it is understood and agreed that such dispute shall be submitted to binding arbitration.

## Section V – Representations & Warranties

**5.1    Capacity of the Parties.** BARNHART represents and warrants to KABLELINK that he has the full power, capacity, and authority to enter into this Agreement. BARNHART also represents and warrants that no portion of any claim, right, demand, action, or cause of action that BARNHART has or might have had arising out of the acts, events, transactions, and occurrences referred to herein have been assigned, transferred, or conveyed to any person not a party to this Agreement, by way of subrogation, operation of law, or otherwise, and that no releases or settlement agreements are necessary or need to be obtained from any other person or entity to release and discharge completely any of BARNHART's claims released in this Agreement.

**5.2    Entire Agreement.** This Agreement sets forth the entire agreement between BARNHART and KABLELINK related to the release and waiver of his FLSA claims. This Agreement shall not affect the existence or enforceability of any prior independent contractor agreements or any restrictive covenant agreements previously in place between BARNHART and KABLELINK, including, but not limited to those regarding confidential information, non-disclosure, non-solicitation, or non-competition. BARNHART acknowledges that he has not relied on any representations, promises, or agreements of any kind that may have been made to him in connection with his decision to sign this Agreement, except for those expressly set forth in this Agreement.

**5.3    Binding on Plaintiff.** BARNHART represents and warrants that he understands that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, this Agreement will remain binding and effective and the parties expressly accept and assume the risk of such possible differences and agree that this Agreement shall remain binding and effective notwithstanding such potential differences.

**5.4    Full and Final Release of FLSA Claims.** BARNHART represents and warrants to KABLELINK that he understands and agrees that this Agreement shall act as a full and final release of all FLSA claims of every nature and kind whatsoever that have arisen, or that could have arisen between him and KABLELINK, whether such claims are currently known and regardless of whether they were foreseeable or unforeseeable.

**5.5    Recitals Incorporated.** All of the recitals and representations described above or referred to in this Agreement are herein incorporated by reference and specifically made a part of this Agreement, and the same are acknowledged as having been relied upon by the parties.

BARNHART

KABLELINK

**5.6** **Counterparts.** This Agreement may be executed in counterparts. A photocopy, digital image, or facsimile of this Agreement shall be binding and fully admissible as an original for purposes of this lawsuit or enforcing this Agreement.

HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN, BARNHART FREELY AND KNOWINGLY, AND AFTER DUE REFLECTION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE KABLELINK OF ANY AND ALL FLSA CLAIMS HE NOW HAS, HAD OR MAY HAVE AGAINST KABLELINK. IN WITNESS WHEREOF, BARNHART AND KABLELINK HAVE EXECUTED THIS AGREEMENT. BARNHART KNOWINGLY AND VOLUNTARILY EXECUTES THIS WAIVER ON HIS OWN BEHALF AND ALSO ON BEHALF OF HIS HEIRS, AGENTS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS THAT HE MIGHT HAVE NOW OR IN THE FUTURE. BARNHART SPECIFICALLY ACKNOWLEDGES THAT HE HAS READ THIS AGREEMENT AND THAT HE UNDERSTANDS THE TERMS AND CONDITIONS OF THIS AGREEMENT.

| JOHN T. BARNHART | KABLELINK COMMUNICATIONS, LLC |
|---|---|
| By: _____ | By: _____ |
| Dated: 2/27/13 | Dated: 3/13/13 |

BARNHART

KABLELINK

## SETTLEMENT, RELEASE AND WAIVER OF FLSA CLAIMS AGREEMENT

This Settlement, Release and Waiver of FLSA Claims Agreement ("Agreement") is entered into between, Plaintiff / Opt-in Plaintiff, DAVID M. BAZEMORE, including any company or entity that is owned, operated or controlled by DAVID M. BAZEMORE (all collectively referred to herein as "BAZEMORE") and Defendant, KABLELINK COMMUNICATIONS, LLC ("KABLELINK"). This Agreement shall at all times include and protect KABLELINK (and all of KABLELINK's related domestic and foreign business entities, affiliated entities, corporations, partnerships, limited liability companies, clients, insurers, and subsidiaries) as well as all current and former managers, directors, officers, owners, shareholders, partners, principals, members, board members, employees, clients, assigns and successors in interest, representatives, agents, attorneys, and insurers or reinsurers of KABLELINK and any persons or entities referred to above, both in their representative and individual capacities. All references to KABLELINK expressly include all of the aforementioned individuals, Defendant, and business entities, including any successor corporations or business entities.

### Section I – General Recitals & Representations

**1.1**    BAZEMORE has filed (or opted-into) a lawsuit against KABLELINK alleging claims for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). See *Egidio Spagnolo v. KableLink Communications, LLC*, Case No. 8:11-CV-2197-MSS-EAJ. Forty (40) other contractors filed consents to opt into the case, and the Court conditionally certified the class.

**1.2**    The parties participated in a settlement Conference before United States Magistrate Judge Anthony E. Porcelli on December 21, 2012. Representing the Plaintiff and opt-in Plaintiffs was a committee of class representatives who had full authority of all other opt-in Plaintiffs to resolve the case in its entirety. During the conference, the case was resolved as stated on the record by Judge Porcelli. The Court initialed a schedule containing the amounts offered and accepted for each Plaintiff / opt-in Plaintiff in full compromise of any and all FLSA claims that each Plaintiff / Opt-in Plaintiff may have against KABLELINK (including, but not limited to, any claims for alleged unpaid wages of any kind, liquidated damages and attorneys' fees and costs). During the settlement conference, the issue of attorneys' fees and costs for the entire case was resolved as noted in paragraph 2.5 below

| | | | |
|---|---|---|---|
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |

The parties have agreed to submit this settlement to the Court for approval under seal and/or *in camera*. The Court has approved an *in camera* review by Judge Porcelli. See [Dkt. 75]. Upon Court approval, a settlement check for each Plaintiff and opt-in Plaintiff will be delivered to Plaintiff's counsel's office provided that the specific Plaintiff (or opt-in Plaintiff) has executed a Settlement, Release and Waiver of Claims Agreement and delivered same to KABLELINK's counsel's office. That is, after a Plaintiff / Opt-in Plaintiff has executed a Settlement, Release and Waiver of Claims Agreement and it is delivered to counsel for KABLELINK, his check will be processed and sent to Plaintiff's counsel. Any Plaintiff / Opt-in Plaintiff who does not execute a Settlement, Release and Waiver of Claims Agreement will not receive a check.

_____
BAZEMORE

_____
T.C.
KABLELINK

Page 1 of 7

1.3   KABLELINK denies any and all allegations of wrongdoing, liability or fault.   To compromise, settle and resolve their differences without admitting the validity of or any liability for the claims asserted by BAZEMORE against KABLELINK, the parties have elected to voluntarily enter into this Agreement.   BAZEMORE agrees that neither this Agreement nor the furnishing of any consideration under this Agreement shall be construed or interpreted as an admission of any wrongdoing, unlawful conduct, fault or liability by KABLELINK.   *Moreover, by entering into this Agreement, KABLELINK does not waive its position that BAZEMORE was an independent contractor for KABLELINK.   Further, KABLELINK is not required to change its method of compensation of its contactors.*

1.4   It is the desire of all parties to fully and finally settle and resolve any and all actual and potential FLSA claims that BAZEMORE may have against KABLELINK and/or the other released persons or entities (as defined herein).   Accordingly, without admitting liability, the parties have reached this agreement and compromise after considering the expense and uncertainty of future proceedings, arbitration, litigation, trials, and appeals, and with the desire of resolving all of BAZEMORE's pending or potential FLSA claims in their entirety, including the above-referenced allegations.

1.5   In consideration of these General Recitals & Representations (which are incorporated herein) and the terms, conditions, promises, covenants, releases and waivers contained in this Agreement, the parties, intending to be legally bound, agree as follows:

## Section II – Release & Payment

2.1   **Release and Waiver of FLSA Claims.**   BAZEMORE knowingly and voluntarily does hereby release and waive any and all FLSA claims and actions against KABLELINK that he may now have against KABLELINK regardless of whether the claims are known or unknown, accrued or unaccrued, or discovered or not yet discovered.   This release and waiver specifically includes any kind of claim arising under the Fair Labor Standards Act, as amended, including, but not limited to, claims for alleged unpaid overtime, minimum wages, liquidated damages, injunctive relief, and attorneys' fees, costs, or other expenses.   However, this Agreement does not waive rights or claims that may arise after the date the waiver is executed.   *Thus, this Agreement constitutes a full and final bar to any and all FLSA claims of any type that BAZEMORE may have against KABLELINK.*

2.2   **Dismissal of Claims / Court Approval.**   With respect to the matter referenced in paragraph 1.1 above, BAZEMORE agrees to submit this settlement to the Court for approval *in camera* and/or under seal in order to have the case dismissed with prejudice.

2.3   **Covenant Not to Sue.**   BAZEMORE agrees that he will not sue KABLELINK concerning any FLSA claim that he might now have against KABLELINK.

2.4   **Complete Bar to FLSA Recovery.**   BAZEMORE agrees that with respect to the FLSA claims that he is waiving herein, he is waiving not only his right to recover money or other relief in any action that he might institute, but also that he is waiving any right to recover money or other relief in any action that might be brought on his behalf by any other person, entity, or agency, including but not limited to the United States Department of Labor.

BAZEMORE

KABLELINK

Page 2 of 7

**2.5    Consideration and Payment.**  In exchange for: (1) BAZEMORE's release and waiver of any and all FLSA claims (including those for attorneys' fees and costs) against KABLELINK; and (2) all other promises BAZEMORE has made herein. KABLELINK agrees to pay to BAZEMORE the total

| | | | |
|---|---|---|---|
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |

BAZEMORE).  A check for the payment of the attorney's fees and costs will also be sent to Plaintiffs' counsel within thirty (30) days of Court approval and execution of this Agreement.  If approved by the Court, and after the executed original of this Agreement is returned to counsel for KABLELINK, the checks will be delivered to: Chris Gray, Esquire, Florin Roebig, P.A., 777 Alderman Road, Palm Harbor, Florida 34683. All aspects of this Agreement are contingent upon the Court's approval of this Agreement and the dismissal of the lawsuit referenced in paragraph 1.1 above with prejudice.  For these settlement sums, 1099's will be issued by KABLELINK or its accountant as appropriate.  The Court shall retain jurisdiction over this matter to enforce the terms of this settlement.

**2.6    Consideration is Adequate, Ample and All Inclusive:**  BAZEMORE agrees and acknowledges that the sums paid to him (or on his behalf) under this Agreement constitute adequate and ample consideration for this Agreement and for his obligations hereunder.  BAZEMORE understands and agrees that the sums paid to him under this Agreement is a benefit that BAZEMORE is not already entitled to receive and which he would not receive but for his execution of this Agreement. *BAZEMORE acknowledges that the benefit (consideration) afforded to him under this Agreement includes all costs and attorneys' fees and is all that he is entitled to receive from KABLELINK as settlement of any and all FLSA claims of any kind that he has or may have against KABLELINK, including any claims which BAZEMORE has raised or alleged in this matter (or could have raised).  BAZEMORE agrees that all sums paid pursuant to this Agreement represent full compensation for all hours worked and claimed. BAZEMORE represents that no other wages, overtime, compensation, benefits or other amounts are due or owing to him or his company.*

## Section III – Confidentiality, No Encouragement of Claims & No Disparagement

**3.1    Confidentiality.**  Despite the fact that this Agreement might be made part of the Court record, BAZEMORE agrees and understands that the circumstances surrounding this lawsuit, his services to KABLELINK, and this Agreement are strictly and absolutely confidential.  Notwithstanding any notations or filings in the judicial record, BAZEMORE promises that he will not disclose the fact of or terms of this Agreement to anyone, unless ordered to do so by a court of competent jurisdiction. As is the case with all other provisions of this Agreement, Confidentiality is a material condition of this Agreement. BAZEMORE agrees not to disclose or discuss this Agreement, the circumstances related thereto, or any information regarding the existence or substance of this Agreement to anyone except to an attorney and accountant with whom he chooses to consult regarding the execution of this Agreement. BAZEMORE also agrees not to discuss his prior relationship with KABLELINK or any matters related to KABLELINK.

BAZEMORE

KABLELINK

**3.2     No Encouragement of Claims or Litigation.**  BAZEMORE will not encourage, counsel or advise any person to file or bring any type of claim against KABLELINK.

**3.3     No Disparagement.**  BAZEMORE agrees not to disparage KABLELINK to any person or entity.  BAZEMORE agrees that he will not say anything that would adversely affect the reputation or business interests of KABLELINK.  BAZEMORE agrees that neither he nor his representatives will make any disparaging or defamatory or untrue remarks to any third-party concerning KABLELINK or any of its employees, officers or agents, or services.  Such third-parties include, but are not limited to, the press and public media (*i.e.*, any employees or agents of newspapers, television stations, radio stations or other media), any organizations or associations, any Internet websites, "home pages," "blogs," "chat-rooms," "MySpace pages," "Facebook pages," or KABLELINK's former, current or prospective employees or service providers.  BAZEMORE agrees that any breach or threatened breach of this non-disparagement provision would cause irreparable harm to KABLELINK and that its remedies at law or in damages would be inadequate to remedy such a breach or threatened breach, and that this non-disparagement provision may be enforced by way of a restraining order and/or injunction in addition to any other remedies which may be available at law or in equity.

## Section IV – General Provisions

**4.1     Encouragement to Consult Attorney / Time to Consider Agreement.**  BAZEMORE acknowledges that he has consulted an attorney before signing this Agreement.  BAZEMORE also acknowledges that he was given a reasonable period of time within which to review and consider this Agreement before signing it, and that he understands each term of the Agreement and his obligations hereunder.

**4.2     Breach of Agreement.**  BAZEMORE agrees that if he were to breach any of the promises set forth in this Agreement, KABLELINK shall have the right to seek recovery of any and all payments made to BAZEMORE under this Agreement, as well as to seek any other damages incurred.  In addition, should BAZEMORE institute a lawsuit or cause a lawsuit to be instituted against KABLELINK based upon any claims that he has released and waived in this Agreement, BAZEMORE shall pay all costs and attorneys' fees incurred by KABLELINK in defending against any such claim.

**4.3     Files and References.**  BAZEMORE agrees that KABLELINK is not under any obligation to provide any files or records to any other person or entity related to services provided by BAZEMORE to KABLELINK.  BAZEMORE agrees that KABLELINK is under no obligation to provide any type of personal or professional reference to any person or entity.  However, if requested by some third party, KABLELINK will provide to that person/entity (with BAZEMORE's consent), a confirmation of the dates of service performed for KABLELINK, sums paid to BAZEMORE for his services rendered, and the nature of the service performed by BAZEMORE for KABLELINK.

**4.4     Subpoena for Deposition, Records or Other Information:**  Should BAZEMORE be served with a subpoena for deposition or documents or information related to this litigation or Agreement, BAZEMORE and/or his counsel shall: (1) immediately contact KABLELINK or its counsel to notify them in writing of the receipt of such a subpoena; (2) provide KABLELINK or its counsel with a copy of the

BAZEMORE                                                                                    KABLELINK

subpoena; (3) provide KABLELINK or its counsel with a copy of all documents or a list of information that BAZEMORE considers to be responsive to the subpoena; (4) allow KABLELINK or its counsel twenty (20) days to respond to the subpoena and/or to obtain a protective order before producing any such information or documents; and (5) notify KABLELINK or its counsel at least five (5) business days in advance of its intent to provide any subpoenaed documents or to appear for any deposition.

**4.5     Return of Documents and Property.** Along with the executed copy of this Agreement, BAZEMORE agrees to return to KABLELINK any and all property or documents belonging to KABLELINK, including any confidential documents produced to BAZEMORE during the course of this litigation.

**4.6     Tax Implications of Settlement.** BAZEMORE agrees and acknowledges that he bears the sole responsibility for paying any and all applicable federal, state or local taxes (if any are owing) under this Agreement. BAZEMORE agrees to hold KABLELINK harmless and indemnify KABLELINK for any tax liability, interest, and/or penalties arising out of BAZEMORE's failure to pay any taxes that BAZEMORE is obligated to pay. KABLELINK maintains its position that BAZEMORE was an independent contractor. Accordingly, no tax withholding is being done on the sums paid under this Agreement.

**4.7     Effective Date.** This Agreement becomes effective and enforceable upon full execution of the Agreement.

**4.8     Amendment.** This Agreement may not be amended except by written agreement signed by KABLELINK and BAZEMORE.

**4.9     Headings.** The headings and other captions in this Agreement are for convenience and reference only and shall not be used in interpreting, construing or enforcing any of the provisions of this Agreement or to define or limit the scope of any paragraph of this Agreement.

**4.10     Governing Law, Severability, Interpretation and Construction.** This Agreement shall be governed and construed in accordance with the laws of the State of Florida. The paragraphs and provisions of this Agreement are severable; if any paragraph or provision is found to be unenforceable, the remaining paragraphs and provisions will remain in full effect. If any provision of this Agreement is declared illegal or unenforceable by an arbitrator or court of competent jurisdiction, and if it cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. At its option, KABLELINK shall have the right (where permitted by law) to seek to recoup its attorneys' fees and costs incurred in this litigation under this Agreement if this Agreement (or any part thereof) is alleged by BAZEMORE to be unenforceable. The parties hereto acknowledge that this Agreement is a collaborative effort by the attorneys for the parties and that, as such, no provision of this Agreement shall be more strictly construed against one party as the draftsperson thereof.

**4.11     No Use of Document as Evidence.** This Agreement may only be used as evidence in a lawsuit or arbitration proceeding alleging a breach of this Agreement or as a defense to any lawsuit brought by any party. Other than this exception, this Agreement will not be introduced as evidence in any other proceeding or in any other lawsuit to suggest any wrongdoing, liability or fault of KABLELINK.

BAZEMORE

KABLELINK

4.12   **Arbitration of Disputes.**  In the event of a dispute as to the interpretation, enforcement, application or violation of this Agreement, it is understood and agreed that such dispute shall be submitted to binding arbitration.

## Section V – Representations & Warranties

5.1   **Capacity of the Parties.**  BAZEMORE represents and warrants to KABLELINK that he has the full power, capacity, and authority to enter into this Agreement.  BAZEMORE also represents and warrants that no portion of any claim, right, demand, action, or cause of action that BAZEMORE has or might have had arising out of the acts, events, transactions, and occurrences referred to herein have been assigned, transferred, or conveyed to any person not a party to this Agreement, by way of subrogation, operation of law, or otherwise, and that no releases or settlement agreements are necessary or need to be obtained from any other person or entity to release and discharge completely any of BAZEMORE's claims released in this Agreement.

5.2   **Entire Agreement.**  This Agreement sets forth the entire agreement between BAZEMORE and KABLELINK related to the release and waiver of his FLSA claims.  This Agreement shall not affect the existence or enforceability of any prior independent contractor agreements or any restrictive covenant agreements previously in place between BAZEMORE and KABLELINK, including, but not limited to those regarding confidential information, non-disclosure, non-solicitation, or non-competition. BAZEMORE acknowledges that he has not relied on any representations, promises, or agreements of any kind that may have been made to him in connection with his decision to sign this Agreement, except for those expressly set forth in this Agreement.

5.3   **Binding on Plaintiff.**  BAZEMORE represents and warrants that he understands that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, this Agreement will remain binding and effective and the parties expressly accept and assume the risk of such possible differences and agree that this Agreement shall remain binding and effective, notwithstanding such potential differences.

5.4   **Full and Final Release of FLSA Claims.**  BAZEMORE represents and warrants to KABLELINK that he understands and agrees that this Agreement shall act as a full and final release of all FLSA claims of every nature and kind whatsoever that have arisen, or that could have arisen between him and KABLELINK, whether such claims are currently known or unknown, and whether they were foreseeable or unforeseeable.

5.5   **Recitals Incorporated.**  All of the recitals and representations described above or referred to in this Agreement are herein incorporated by reference and specifically made a part of this Agreement, and the same are acknowledged as having been relied upon by the parties.

5.6   **Counterparts.**  This Agreement may be executed in counterparts.  A photocopy, digital image, or facsimile of this Agreement shall be binding and fully admissible as an original for purposes of this lawsuit or enforcing this Agreement.

BAZEMORE

KABLELINK

Page 6 of 7

HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN, BAZEMORE FREELY AND KNOWINGLY, AND AFTER DUE REFLECTION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE KABLELINK OF ANY AND ALL FLSA CLAIMS HE NOW HAS, HAD, OR MAY HAVE AGAINST KABLELINK. IN WITNESS WHEREOF, BAZEMORE AND KABLELINK HAVE EXECUTED THIS AGREEMENT. BAZEMORE KNOWINGLY AND VOLUNTARILY EXECUTES THIS WAIVER ON HIS OWN BEHALF AND ALSO ON BEHALF OF HIS HEIRS, AGENTS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS THAT HE MIGHT HAVE NOW OR IN THE FUTURE. BAZEMORE SPECIFICALLY ACKNOWLEDGES THAT HE HAS READ THIS AGREEMENT AND THAT HE UNDERSTANDS THE TERMS AND CONDITIONS OF THIS AGREEMENT.

| DAVID M. BAZEMORE | KABLELINK COMMUNICATIONS, LLC |
|---|---|
| By: | By: |
| Dated: 2-26-13 | Dated: 3/13/13 |

BAZEMORE

KABLELINK

## SETTLEMENT, RELEASE AND WAIVER OF FLSA CLAIMS AGREEMENT

This Settlement, Release and Waiver of FLSA Claims Agreement ("Agreement") is entered into between, Plaintiff / Opt-in Plaintiff, JOEL V. BLAKEMAN, including any company or entity that is owned, operated or controlled by JOEL V. BLAKEMAN (all collectively referred to herein as "BLAKEMAN") and Defendant, KABLELINK COMMUNICATIONS, LLC ("KABLELINK"). This Agreement shall at all times include and protect KABLELINK (and all of KABLELINK's related domestic and foreign business entities, affiliated entities, corporations, partnerships, limited liability companies, clients, insurers, and subsidiaries) as well as all current and former managers, directors, officers, owners, shareholders, partners, principals, members, board members, employees, clients, assigns and successors in interest, representatives, agents, attorneys, and insurers or reinsurers of KABLELINK and any persons or entities referred to above, both in their representative and individual capacities. All references to KABLELINK expressly include all of the aforementioned individuals, Defendant, and business entities, including any successor corporations or business entities.

### Section I – General Recitals & Representations

**1.1**    BLAKEMAN has filed (or opted-into) a lawsuit against KABLELINK alleging claims for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). See *Egidio Spagnolo v. KableLink Communications, LLC*, Case No. 8:11-CV-2197-MSS-EAJ. Forty (40) other contractors filed consents to opt into the case, and the Court conditionally certified the class.

**1.2**    The parties participated in a settlement Conference before United States Magistrate Judge Anthony E. Porcelli on December 21, 2012. Representing the Plaintiff and opt-in Plaintiffs was a committee of class representatives who had full authority of all other opt-in Plaintiffs to resolve the case in its entirety. During the conference, the case was resolved as stated on the record by Judge Porcelli. The Court initialed a schedule containing the amounts offered and accepted for each Plaintiff / opt-in Plaintiff in full compromise of any and all FLSA claims that each Plaintiff / Opt-in Plaintiff may have against KABLELINK (including, but not limited to, any claims for alleged unpaid wages of any kind, liquidated damages and attorneys' fees and costs). During the settlement conference, the issue of attorneys' fees and costs for the entire case was resolved as noted in paragraph 2.5 below ---

| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- REDACTED |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |

The parties have agreed to submit this settlement to the Court for approval under seal and/or *in camera*. The Court has approved an *in camera* review by Judge Porcelli. See [Dkt. 75]. Upon Court approval, a settlement check for each Plaintiff and opt-in Plaintiff will be delivered to Plaintiff's counsel's office provided that the specific Plaintiff (or opt-in Plaintiff) has executed a Settlement, Release and Waiver of Claims Agreement and delivered same to KABLELINK's counsel's office. That is, after a Plaintiff / Opt-in Plaintiff has executed a Settlement, Release and Waiver of Claims Agreement and it is delivered to counsel for KABLELINK, his check will be processed and sent to Plaintiff's counsel. Any Plaintiff / Opt-in Plaintiff who does not execute a Settlement, Release and Waiver of Claims Agreement will not receive a check.

BLAKEMAN

T.G.
KABLELINK

1.3     KABLELINK denies any and all allegations of wrongdoing, liability or fault.    To compromise, settle and resolve their differences without admitting the validity of or any liability for the claims asserted by BLAKEMAN against KABLELINK, the parties have elected to voluntarily enter into this Agreement. BLAKEMAN agrees that neither this Agreement nor the furnishing of any consideration under this Agreement shall be construed or interpreted as an admission of any wrongdoing, unlawful conduct, fault or liability by KABLELINK. *Moreover, by entering into this Agreement, KABLELINK does not waive its position that BLAKEMAN was an independent contractor for KABLELINK. Further, KABLELINK is not required to change its method of compensation of its contactors.*

1.4     It is the desire of all parties to fully and finally settle and resolve any and all actual and potential FLSA claims that BLAKEMAN may have against KABLELINK and/or the other released persons or entities (as defined herein). Accordingly, without admitting liability, the parties have reached this agreement and compromise after considering the expense and uncertainty of future proceedings, arbitration, litigation, trials, and appeals, and with the desire of resolving all of BLAKEMAN's pending or potential FLSA claims in their entirety, including the above-referenced allegations.

1.5     In consideration of these General Recitals & Representations (which are incorporated herein) and the terms, conditions, promises, covenants, releases and waivers contained in this Agreement, the parties, intending to be legally bound, agree as follows:

### Section II – Release & Payment

2.1     **Release and Waiver of FLSA Claims.**  BLAKEMAN knowingly and voluntarily does hereby release and waive any and all FLSA claims and actions against KABLELINK that he may now have against KABLELINK. regardless of whether the claims are known or unknown, accrued or unaccrued, or discovered or not yet discovered. This release and waiver specifically includes any kind of claim arising under the Fair Labor Standards Act, as amended, including, but not limited to, claims for alleged unpaid overtime, minimum wages, liquidated damages, injunctive relief, and attorneys' fees, costs, or other expenses. However, this Agreement does not waive rights or claims that may arise after the date the waiver is executed. *Thus, this Agreement constitutes a full and final bar to any and all FLSA claims of any type that BLAKEMAN may have against KABLELINK.*

2.2     **Dismissal of Claims / Court Approval.**  With respect to the matter referenced in paragraph 1.1 above, BLAKEMAN agrees to submit this settlement to the Court for approval *in camera* and/or under seal in order to have the case dismissed with prejudice.

2.3     **Covenant Not to Sue.**  BLAKEMAN agrees that he will not sue KABLELINK concerning any FLSA claim that he might now have against KABLELINK.

2.4     **Complete Bar to FLSA Recovery.**  BLAKEMAN agrees that with respect to the FLSA claims that he is waiving herein, he is waiving not only his right to recover money or other relief in any action that he might institute, but also that he is waiving any right to recover money or other relief in any action that might be brought on his behalf by any other person, entity, or agency, including but not limited to the United States Department of Labor.

_____                                    _____
BLAKEMAN                                                                    KABLELINK

**2.5    Consideration and Payment**.  In exchange for: (1) BLAKEMAN's release and waiver of any and all FLSA claims (including those for attorneys' fees and costs) against KABLELINK; and (2) all other promises BLAKEMAN has made herein, KABLELINK agrees to pay to BLAKEMAN the total

--- REDACTED ---     --- REDACTED ---     --- REDACTED ---     --- REDACTED ---
--- REDACTED ---     --- REDACTED ---     --- REDACTED ---     --- REDACTED ---
--- REDACTED ---     --- REDACTED ---     --- REDACTED ---     --- REDACTED ---
--- REDACTED ---     --- REDACTED ---     --- REDACTED ---     --- REDACTED ---
--- REDACTED ---     --- REDACTED ---     --- REDACTED ---     --- REDACTED ---
--- REDACTED ---     --- REDACTED ---     --- REDACTED ---     --- REDACTED ---
--- REDACTED ---     --- REDACTED ---     --- REDACTED ---     --- REDACTED ---

sum is attributable to all Plaintiffs and opt-in Plaintiffs, including BLAKEMAN).  A check for the payment of the attorney's fees and costs will also be sent to Plaintiffs' counsel within thirty (30) days of Court approval and execution of this Agreement.  If approved by the Court, and after the executed original of this Agreement is returned to counsel for KABLELINK, the checks will be delivered to: Chris Gray, Esquire, Florin Roebig, P.A., 777 Alderman Road, Palm Harbor, Florida  34683.  All aspects of this Agreement are contingent upon the Court's approval of this Agreement and the dismissal of the lawsuit referenced in paragraph 1.1 above with prejudice.  For these settlement sums, 1099's will be issued by KABLELINK or its accountant as appropriate.  The Court shall retain jurisdiction over this matter to enforce the terms of this settlement.

**2.6    Consideration is Adequate, Ample and All Inclusive:**  BLAKEMAN agrees and acknowledges that the sums paid to him (or on his behalf) under this Agreement constitute adequate and ample consideration for this Agreement and for his obligations hereunder.  BLAKEMAN understands and agrees that the sums paid to him under this Agreement is a benefit that BLAKEMAN is not already entitled to receive and which he would not receive but for his execution of this Agreement.  *BLAKEMAN acknowledges that the benefit (consideration) afforded to him under this Agreement includes all costs and attorneys' fees and is all that he is entitled to receive from KABLELINK as settlement of any and all FLSA claims of any kind that he has or may have against KABLELINK, including any claims which BLAKEMAN has raised or alleged in this matter (or could have raised).  BLAKEMAN agrees that all sums paid pursuant to this Agreement represent full compensation for all hours worked and claimed. BLAKEMAN represents that no other wages, overtime, compensation, benefits or other amounts are due or owing to him or his company.*

### Section III – Confidentiality, No Encouragement of Claims & No Disparagement

**3.1    Confidentiality**.  Despite the fact that this Agreement might be made part of the Court record, BLAKEMAN agrees and understands that the circumstances surrounding this lawsuit, his services to KABLELINK, and this Agreement are strictly and absolutely confidential.  Notwithstanding any notations or filings in the judicial record, BLAKEMAN promises that he will not disclose the fact of or terms of this Agreement to anyone, unless ordered to do so by a court of competent jurisdiction.  As is the case with all other provisions of this Agreement, Confidentiality is a material condition of this Agreement. BLAKEMAN agrees not to disclose or discuss this Agreement, the circumstances related thereto, or any information regarding the existence or substance of this Agreement to anyone except to an attorney and accountant with whom he chooses to consult regarding the execution of this Agreement.  BLAKEMAN

_____
BLAKEMAN

_____
KABLELINK

also agrees not to discuss his prior relationship with KABLELINK. or any matters related to KABLELINK.

**3.2     No Encouragement of Claims or Litigation.** BLAKEMAN will not encourage, counsel or advise any person to file or bring any type of claim against KABLELINK.

**3.3     No Disparagement.** BLAKEMAN agrees not to disparage KABLELINK to any person or entity. BLAKEMAN agrees that he will not say anything that would adversely affect the reputation or business interests of KABLELINK. BLAKEMAN agrees that neither he nor his representatives will make any disparaging or defamatory or untrue remarks to any third-party concerning KABLELINK or any of its employees, officers or agents, or services. Such third-parties include, but are not limited to, the press and public media (*i.e.,* any employees or agents of newspapers, television stations, radio stations or other media), any organizations or associations, any Internet websites, "home pages," "blogs," "chat-rooms," "MySpace pages," "Facebook pages," or KABLELINK's former, current or prospective employees or service providers. BLAKEMAN agrees that any breach or threatened breach of this non-disparagement provision would cause irreparable harm to KABLELINK and that its remedies at law or in damages would be inadequate to remedy such a breach or threatened breach, and that this non-disparagement provision may be enforced by way of a restraining order and/or injunction in addition to any other remedies which may be available at law or in equity.

## Section IV – General Provisions

**4.1     Encouragement to Consult Attorney / Time to Consider Agreement.** BLAKEMAN acknowledges that he has consulted an attorney before signing this Agreement. BLAKEMAN also acknowledges that he was given a reasonable period of time within which to review and consider this Agreement before signing it, and that he understands each term of the Agreement and his obligations hereunder.

**4.2     Breach of Agreement.** BLAKEMAN agrees that if he were to breach any of the promises set forth in this Agreement, KABLELINK shall have the right to seek recovery of any and all payments made to BLAKEMAN under this Agreement, as well as to seek any other damages incurred. In addition, should BLAKEMAN institute a lawsuit or cause a lawsuit to be instituted against KABLELINK based upon any claims that he has released and waived in this Agreement, BLAKEMAN shall pay all costs and attorneys' fees incurred by KABLELINK in defending against any such claim.

**4.3     Files and References.** BLAKEMAN agrees that KABLELINK is not under any obligation to provide any files or records to any other person or entity related to services provided by BLAKEMAN to KABLELINK. BLAKEMAN agrees that KABLELINK is under no obligation to provide any type of personal or professional reference to any person or entity. However, if requested by some third party, KABLELINK will provide to that person/entity (with BLAKEMAN's consent), a confirmation of the dates of service performed for KABLELINK, sums paid to BLAKEMAN for his services rendered, and the nature of the service performed by BLAKEMAN for KABLELINK.

**4.4     Subpoena for Deposition, Records or Other Information:** Should BLAKEMAN be served with a subpoena for deposition or documents or information related to this litigation or Agreement,

BLAKEMAN

KABLELINK

Page 4 of 7

BLAKEMAN and/or his counsel shall: (1) immediately contact KABLELINK or its counsel to notify them in writing of the receipt of such a subpoena; (2) provide KABLELINK or its counsel with a copy of the subpoena; (3) provide KABLELINK or its counsel with a copy of all documents or a list of information that BLAKEMAN considers to be responsive to the subpoena; (4) allow KABLELINK or its counsel twenty (20) days to respond to the subpoena and/or to obtain a protective order before producing any such information or documents; and (5) notify KABLELINK or its counsel at least five (5) business days in advance of its intent to provide any subpoenaed documents or to appear for any deposition.

   **4.5   Return of Documents and Property.**  Along with the executed copy of this Agreement, BLAKEMAN agrees to return to KABLELINK any and all property or documents belonging to KABLELINK, including any confidential documents produced to BLAKEMAN during the course of this litigation.

   **4.6   Tax Implications of Settlement.**  BLAKEMAN agrees and acknowledges that he bears the sole responsibility for paying any and all applicable federal, state or local taxes (if any are owing) under this Agreement.  BLAKEMAN agrees to hold KABLELINK harmless and indemnify KABLELINK for any tax liability, interest, and/or penalties arising out of BLAKEMAN's failure to pay any taxes that BLAKEMAN is obligated to pay.  KABLELINK maintains its position that BLAKEMAN was an independent contractor.  Accordingly, no tax withholding is being done on the sums paid under this Agreement.

   **4.7   Effective Date.**  This Agreement becomes effective and enforceable upon full execution of the Agreement.

   **4.8   Amendment.**  This Agreement may not be amended except by written agreement signed by KABLELINK and BLAKEMAN.

   **4.9   Headings.**  The headings and other captions in this Agreement are for convenience and reference only and shall not be used in interpreting, construing or enforcing any of the provisions of this Agreement or to define or limit the scope of any paragraph of this Agreement.

   **4.10   Governing Law, Severability, Interpretation and Construction.**  This Agreement shall be governed and construed in accordance with the laws of the State of Florida.  The paragraphs and provisions of this Agreement are severable; if any paragraph or provision is found to be unenforceable, the remaining paragraphs and provisions will remain in full effect.  If any provision of this Agreement is declared illegal or unenforceable by an arbitrator or court of competent jurisdiction, and if it cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.  At its option, KABLELINK shall have the right (where permitted by law) to seek to recoup its attorneys' fees and costs incurred in this litigation under this Agreement if this Agreement (or any part thereof) is alleged by BLAKEMAN to be unenforceable.  The parties hereto acknowledge that this Agreement is a collaborative effort by the attorneys for the parties and that, as such, no provision of this Agreement shall be more strictly construed against one party as the draftsperson thereof.

   **4.11   No Use of Document as Evidence.**  This Agreement may only be used as evidence in a lawsuit or arbitration proceeding alleging a breach of this Agreement or as a defense to any lawsuit

_____
BLAKEMAN

_____
KABLELINK

brought by any party.  Other than this exception, this Agreement will not be introduced as evidence in any other proceeding or in any other lawsuit to suggest any wrongdoing, liability or fault of KABLELINK.

    **4.12    Arbitration of Disputes.**  In the event of a dispute as to the interpretation, enforcement, application or violation of this Agreement, it is understood and agreed that such dispute shall be submitted to binding arbitration.

### Section V – Representations & Warranties

    **5.1    Capacity of the Parties.**  BLAKEMAN represents and warrants to KABLELINK that he has the full power, capacity, and authority to enter into this Agreement.  BLAKEMAN also represents and warrants that no portion of any claim, right, demand, action, or cause of action that BLAKEMAN has or might have had arising out of the acts, events, transactions, and occurrences referred to herein have been assigned, transferred, or conveyed to any person not a party to this Agreement, by way of subrogation, operation of law, or otherwise, and that no releases or settlement agreements are necessary or need to be obtained from any other person or entity to release and discharge completely any of BLAKEMAN's claims released in this Agreement.

    **5.2    Entire Agreement.**  This Agreement sets forth the entire agreement between BLAKEMAN and KABLELINK related to the release and waiver of his FLSA claims.  This Agreement shall not affect the existence or enforceability of any prior independent contractor agreements or any restrictive covenant agreements previously in place between BLAKEMAN and KABLELINK, including, but not limited to those regarding confidential information, non-disclosure, non-solicitation, or non-competition.  BLAKEMAN acknowledges that he has not relied on any representations, promises, or agreements of any kind that may have been made to him in connection with his decision to sign this Agreement, except for those expressly set forth in this Agreement.

    **5.3    Binding on Plaintiff.**  BLAKEMAN represents and warrants that he understands that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, this Agreement will remain binding and effective and the parties expressly accept and assume the risk of such possible differences and agree that this Agreement shall remain binding and effective, notwithstanding such potential differences.

    **5.4    Full and Final Release of FLSA Claims.**  BLAKEMAN represents and warrants to KABLELINK that he understands and agrees that this Agreement shall act as a full and final release of all FLSA claims of every nature and kind whatsoever that have arisen, or that could have arisen between him and KABLELINK, whether such claims are currently known or unknown, and whether they were foreseeable or unforeseeable.

    **5.5    Recitals Incorporated.**  All of the recitals and representations described above or referred to in this Agreement are herein incorporated by reference and specifically made a part of this Agreement, and the same are acknowledged as having been relied upon by the parties.

BLAKEMAN

KABLELINK

5.6    **Counterparts.**  This Agreement may be executed in counterparts.  A photocopy, digital image, or facsimile of this Agreement shall be binding and fully admissible as an original for purposes of this lawsuit or enforcing this Agreement.

HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN, BLAKEMAN FREELY AND KNOWINGLY, AND AFTER DUE REFLECTION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE KABLELINK OF ANY AND ALL FLSA CLAIMS HE NOW HAS, HAD, OR MAY HAVE AGAINST KABLELINK.  IN WITNESS WHEREOF, BLAKEMAN AND KABLELINK HAVE EXECUTED THIS AGREEMENT.  BLAKEMAN KNOWINGLY AND VOLUNTARILY EXECUTES THIS WAIVER ON HIS OWN BEHALF AND ALSO ON BEHALF OF HIS HEIRS, AGENTS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS THAT HE MIGHT HAVE NOW OR IN THE FUTURE.  BLAKEMAN SPECIFICALLY ACKNOWLEDGES THAT HE HAS READ THIS AGREEMENT AND THAT HE UNDERSTANDS THE TERMS AND CONDITIONS OF THIS AGREEMENT.

| JOEL V. BLAKEMAN | KABLELINK COMMUNICATIONS, LLC |
|---|---|
| By: _____ | By: _____ |
| Dated: 2-25-13 | Dated: 3/13/13 |

BLAKEMAN

KABLELINK

## SETTLEMENT, RELEASE AND WAIVER OF FLSA CLAIMS AGREEMENT

This Settlement, Release and Waiver of FLSA Claims Agreement ("Agreement") is entered into between, Plaintiff / Opt-in Plaintiff, CHRISTOPHER CASSELL, including any company or entity that is owned, operated or controlled by CHRISTOPHER CASSELL (all collectively referred to herein as "CASSELL") and Defendant, KABLELINK COMMUNICATIONS, LLC ("KABLELINK"). This Agreement shall at all times include and protect KABLELINK (and all of KABLELINK's related domestic and foreign business entities, affiliated entities, corporations, partnerships, limited liability companies, clients, insurers, and subsidiaries) as well as all current and former managers, directors, officers, owners, shareholders, partners, principals, members, board members, employees, clients, assigns and successors in interest, representatives, agents, attorneys, and insurers or reinsurers of KABLELINK and any persons or entities referred to above, both in their representative and individual capacities. All references to KABLELINK expressly include all of the aforementioned individuals, Defendant, and business entities, including any successor corporations or business entities.

### Section I – General Recitals & Representations

**1.1**     CASSELL has filed (or opted-into) a lawsuit against KABLELINK alleging claims for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"). *See Egidio Spagnolo v. KableLink Communications, LLC*, Case No. 8:11-CV-2197-MSS-EAJ.   Forty (40) other contractors filed consents to opt into the case, and the Court conditionally certified the class.

**1.2**     The parties participated in a settlement Conference before United States Magistrate Judge Anthony E. Porcelli on December 21, 2012.   Representing the Plaintiff and opt-in Plaintiffs was a committee of class representatives who had full authority of all other opt-in Plaintiffs to resolve the case in its entirety.   During the conference, the case was resolved as stated on the record by Judge Porcelli. The Court initialed a schedule containing the amounts offered and accepted for each Plaintiff / opt-in Plaintiff in full compromise of any and all FLSA claims that each Plaintiff / Opt-in Plaintiff may have against KABLELINK (including, but not limited to, any claims for alleged unpaid wages of any kind, liquidated damages and attorneys' fees and costs).   During the settlement conference, the issue of attorneys' fees and costs for the entire case was resolved as noted in paragraph 2.5 below --- **REDACTED**

--- **REDACTED** ---     --- **REDACTED** ---     --- **REDACTED** ---     --- **REDACTED**----
--- **REDACTED** ---     --- **REDACTED** ---     --- **REDACTED** ---     --- **REDACTED** ---
--- **REDACTED** ---     --- **REDACTED** ---     --- **REDACTED** ---     --- **REDACTED** ---
--- **REDACTED** ---     --- **REDACTED** ---     --- **REDACTED** ---     --- **REDACTED** ---
--- **REDACTED** ---     --- **REDACTED** ---     --- **REDACTED** ---     --- **REDACTED** ---
--- **REDACTED** ---     --- **REDACTED** ---     --- **REDACTED** ---     --- **REDACTED** ---

The parties have agreed to submit this settlement to the Court for approval under seal and/or *in camera*.   The Court has approved an *in camera* review by Judge Porcelli. See [Dkt. 75].   Upon Court approval, a settlement check for each Plaintiff and opt-in Plaintiff will be delivered to Plaintiff's counsel's office provided that the specific Plaintiff (or opt-in Plaintiff) has executed a Settlement, Release and Waiver of Claims Agreement and delivered same to KABLELINK's counsel's office.   That is, after a Plaintiff / Opt-in Plaintiff has executed a Settlement, Release and Waiver of Claims Agreement and it is delivered to counsel for KABLELINK, his check will be processed and sent to Plaintiff's counsel.   Any Plaintiff / Opt-in Plaintiff who does not execute a Settlement, Release and Waiver of Claims Agreement will not receive a check.

*B. C*
CASSELL

*T. G .*
KABLELINK

**1.3** KABLELINK denies any and all allegations of wrongdoing, liability or fault. To compromise, settle and resolve their differences without admitting the validity of or any liability for the claims asserted by CASSELL against KABLELINK, the parties have elected to voluntarily enter into this Agreement. CASSELL agrees that neither this Agreement nor the furnishing of any consideration under this Agreement shall be construed or interpreted as an admission of any wrongdoing, unlawful conduct, fault or liability by KABLELINK. *Moreover, by entering into this Agreement, KABLELINK does not waive its position that CASSELL was an independent contractor for KABLELINK. Further, KABLELINK is not required to change its method of compensation of its contactors.*

**1.4** It is the desire of all parties to fully and finally settle and resolve any and all actual and potential FLSA claims that CASSELL may have against KABLELINK and/or the other released persons or entities (as defined herein). Accordingly, without admitting liability, the parties have reached this agreement and compromise after considering the expense and uncertainty of future proceedings, arbitration, litigation, trials, and appeals, and with the desire of resolving all of CASSELL's pending or potential FLSA claims in their entirety, including the above-referenced allegations.

**1.5** In consideration of these General Recitals & Representations (which are incorporated herein) and the terms, conditions, promises, covenants, releases and waivers contained in this Agreement, the parties, intending to be legally bound, agree as follows:

### Section II – Release & Payment

**2.1** **Release and Waiver of FLSA Claims.** CASSELL knowingly and voluntarily does hereby release and waive any and all FLSA claims and actions against KABLELINK that he may now have against KABLELINK regardless of whether the claims are known or unknown, accrued or unaccrued, or discovered or not yet discovered. This release and waiver specifically includes any kind of claim arising under the Fair Labor Standards Act, as amended, including, but not limited to, claims for alleged unpaid overtime, minimum wages, liquidated damages, injunctive relief, and attorneys' fees, costs, or other expenses. However, this Agreement does not waive rights or claims that may arise after the date the waiver is executed. *Thus, this Agreement constitutes a full and final bar to any and all FLSA claims of any type that CASSELL may have against KABLELINK.*

**2.2** **Dismissal of Claims / Court Approval.** With respect to the matter referenced in paragraph 1.1 above, CASSELL agrees to submit this settlement to the Court for approval *in camera* and/or under seal in order to have the case dismissed with prejudice.

**2.3** **Covenant Not to Sue.** CASSELL agrees that he will not sue KABLELINK concerning any FLSA claim that he might now have against KABLELINK.

**2.4** **Complete Bar to FLSA Recovery.** CASSELL agrees that with respect to the FLSA claims that he is waiving herein, he is waiving not only his right to recover money or other relief in any action that he might institute, but also that he is waiving any right to recover money or other relief in any action that might be brought on his behalf by any other person, entity, or agency, including but not limited to the United States Department of Labor.

*B.C.*
CASSELL

*J.G.*
KABLELINK

**2.5   Consideration and Payment.** In exchange for: (1) CASSELL's release and waiver of any and all FLSA claims (including those for attorneys' fees and costs) against KABLELINK; and (2) all other promises CASSELL has made herein, KABLELINK agrees to pay to CASSELL the total collective

| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
|---|---|---|---|
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |
| --- REDACTED --- | --- REDACTED --- | --- REDACTED --- | --- REDACTED --- |

all Plaintiffs and opt-in Plaintiffs, including CASSELL). A check for the payment of the attorney's fees and costs will also be sent to Plaintiffs' counsel within thirty (30) days of Court approval and execution of this Agreement. If approved by the Court, and after the executed original of this Agreement is returned to counsel for KABLELINK, the checks will be delivered to: Chris Gray, Esquire, Florin Roebig, P.A., 777 Alderman Road, Palm Harbor, Florida 34683. All aspects of this Agreement are contingent upon the Court's approval of this Agreement and the dismissal of the lawsuit referenced in paragraph 1.1 above with prejudice. For these settlement sums, 1099's will be issued by KABLELINK or its accountant as appropriate. The Court shall retain jurisdiction over this matter to enforce the terms of this settlement.

**2.6   Consideration is Adequate, Ample and All Inclusive:**   CASSELL agrees and acknowledges that the sums paid to him (or on his behalf) under this Agreement constitute adequate and ample consideration for this Agreement and for his obligations hereunder. CASSELL understands and agrees that the sums paid to him under this Agreement is a benefit that CASSELL is not already entitled to receive and which he would not receive but for his execution of this Agreement. *CASSELL acknowledges that the benefit (consideration) afforded to him under this Agreement includes all costs and attorneys' fees and is all that he is entitled to receive from KABLELINK as settlement of any and all FLSA claims of any kind that he has or may have against KABLELINK, including any claims which CASSELL has raised or alleged in this matter (or could have raised). CASSELL agrees that all sums paid pursuant to this Agreement represent full compensation for all hours worked and claimed. CASSELL represents that no other wages, overtime, compensation, benefits or other amounts are due or owing to him or his company.*

### Section III – Confidentiality, No Encouragement of Claims & No Disparagement

**3.1   Confidentiality.** Despite the fact that this Agreement might be made part of the Court record, CASSELL agrees and understands that the circumstances surrounding this lawsuit, his services to KABLELINK, and this Agreement are strictly and absolutely confidential. Notwithstanding any notations or filings in the judicial record, CASSELL promises that he will not disclose the fact of or terms of this Agreement to anyone, unless ordered to do so by a court of competent jurisdiction. As is the case with all other provisions of this Agreement, Confidentiality is a material condition of this Agreement. CASSELL agrees not to disclose or discuss this Agreement, the circumstances related thereto, or any information regarding the existence or substance of this Agreement to anyone except to an attorney and accountant with whom he chooses to consult regarding the execution of this Agreement. CASSELL also agrees not to discuss his prior relationship with KABLELINK or any matters related to KABLELINK.

B.C.
_____
CASSELL

T.G.
_____
KABLELINK

**3.2    No Encouragement of Claims or Litigation.**  CASSELL will not encourage, counsel or advise any person to file or bring any type of claim against KABLELINK.

**3.3    No Disparagement.**  CASSELL agrees not to disparage KABLELINK to any person or entity.  CASSELL agrees that he will not say anything that would adversely affect the reputation or business interests of KABLELINK.  CASSELL agrees that neither he nor his representatives will make any disparaging or defamatory or untrue remarks to any third-party concerning KABLELINK or any of its employees, officers or agents, or services.  Such third-parties include, but are not limited to, the press and public media (*i.e.,* any employees or agents of newspapers, television stations, radio stations or other media), any organizations or associations, any Internet websites, "home pages," "blogs," "chat-rooms," "MySpace pages," "Facebook pages," or KABLELINK's former, current or prospective employees or service providers.  CASSELL agrees that any breach or threatened breach of this non-disparagement provision would cause irreparable harm to KABLELINK and that its remedies at law or in damages would be inadequate to remedy such a breach or threatened breach, and that this non-disparagement provision may be enforced by way of a restraining order and/or injunction in addition to any other remedies which may be available at law or in equity.

### Section IV – General Provisions

**4.1    Encouragement to Consult Attorney / Time to Consider Agreement.**  CASSELL acknowledges that he has consulted an attorney before signing this Agreement.  CASSELL also acknowledges that he was given a reasonable period of time within which to review and consider this Agreement before signing it, and that he understands each term of the Agreement and his obligations hereunder.

**4.2    Breach of Agreement.**  CASSELL agrees that if he were to breach any of the promises set forth in this Agreement, KABLELINK shall have the right to seek recovery of any and all payments made to CASSELL under this Agreement, as well as to seek any other damages incurred.  In addition, should CASSELL institute a lawsuit or cause a lawsuit to be instituted against KABLELINK based upon any claims that he has released and waived in this Agreement, CASSELL shall pay all costs and attorneys' fees incurred by KABLELINK in defending against any such claim.

**4.3    Files and References.**  CASSELL agrees that KABLELINK is not under any obligation to provide any files or records to any other person or entity related to services provided by CASSELL to KABLELINK.  CASSELL agrees that KABLELINK is under no obligation to provide any type of personal or professional reference to any person or entity.  However, if requested by some third party, KABLELINK will provide to that person/entity (with CASSELL's consent), a confirmation of the dates of service performed for KABLELINK, sums paid to CASSELL for his services rendered, and the nature of the service performed by CASSELL for KABLELINK.

**4.4    Subpoena for Deposition, Records or Other Information:**  Should CASSELL be served with a subpoena for deposition or documents or information related to this litigation or Agreement, CASSELL and/or his counsel shall: (1) immediately contact KABLELINK or its counsel to notify them in writing of the receipt of such a subpoena; (2) provide KABLELINK or its counsel with a copy of the subpoena; (3) provide KABLELINK or its counsel with a copy of all documents or a list of information

_B.C._
CASSELL

_T.G._
KABLELINK

that CASSELL considers to be responsive to the subpoena; (4) allow KABLELINK or its counsel twenty (20) days to respond to the subpoena and/or to obtain a protective order before producing any such information or documents; and (5) notify KABLELINK or its counsel at least five (5) business days in advance of its intent to provide any subpoenaed documents or to appear for any deposition.

**4.5    Return of Documents and Property.**  Along with the executed copy of this Agreement, CASSELL agrees to return to KABLELINK any and all property or documents belonging to KABLELINK, including any confidential documents produced to CASSELL during the course of this litigation.

**4.6    Tax Implications of Settlement.**  CASSELL agrees and acknowledges that he bears the sole responsibility for paying any and all applicable federal, state or local taxes (if any are owing) under this Agreement.  CASSELL agrees to hold KABLELINK harmless and indemnify KABLELINK for any tax liability, interest, and/or penalties arising out of CASSELL's failure to pay any taxes that CASSELL is obligated to pay.  KABLELINK maintains its position that CASSELL was an independent contractor. Accordingly, no tax withholding is being done on the sums paid under this Agreement.

**4.7    Effective Date.**  This Agreement becomes effective and enforceable upon full execution of the Agreement.

**4.8    Amendment.**  This Agreement may not be amended except by written agreement signed by KABLELINK and CASSELL.

**4.9    Headings.**  The headings and other captions in this Agreement are for convenience and reference only and shall not be used in interpreting, construing or enforcing any of the provisions of this Agreement or to define or limit the scope of any paragraph of this Agreement.

**4.10    Governing Law, Severability, Interpretation and Construction.**  This Agreement shall be governed and construed in accordance with the laws of the State of Florida.  The paragraphs and provisions of this Agreement are severable; if any paragraph or provision is found to be unenforceable, the remaining paragraphs and provisions will remain in full effect.  If any provision of this Agreement is declared illegal or unenforceable by an arbitrator or court of competent jurisdiction, and if it cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.  At its option, KABLELINK shall have the right (where permitted by law) to seek to recoup its attorneys' fees and costs incurred in this litigation under this Agreement if this Agreement (or any part thereof) is alleged by CASSELL to be unenforceable.  The parties hereto acknowledge that this Agreement is a collaborative effort by the attorneys for the parties and that, as such, no provision of this Agreement shall be more strictly construed against one party as the draftsperson thereof.

**4.11    No Use of Document as Evidence.**  This Agreement may only be used as evidence in a lawsuit or arbitration proceeding alleging a breach of this Agreement or as a defense to any lawsuit brought by any party.  Other than this exception, this Agreement will not be introduced as evidence in any other proceeding or in any other lawsuit to suggest any wrongdoing, liability or fault of KABLELINK.

_B.C._
_____
CASSELL

_T.G._
_____
KABLELINK

**4.12    Arbitration of Disputes.**  In the event of a dispute as to the interpretation, enforcement, application or violation of this Agreement, it is understood and agreed that such dispute shall be submitted to binding arbitration.

### Section V – Representations & Warranties

**5.1    Capacity of the Parties.**  CASSELL represents and warrants to KABLELINK that he has the full power, capacity, and authority to enter into this Agreement.   CASSELL also represents and warrants that no portion of any claim, right, demand, action, or cause of action that CASSELL has or might have had arising out of the acts, events, transactions, and occurrences referred to herein have been assigned, transferred, or conveyed to any person not a party to this Agreement, by way of subrogation, operation of law, or otherwise, and that no releases or settlement agreements are necessary or need to be obtained from any other person or entity to release and discharge completely any of CASSELL's claims released in this Agreement.

**5.2    Entire Agreement.**  This Agreement sets forth the entire agreement between CASSELL and KABLELINK related to the release and waiver of his FLSA claims.  This Agreement shall not affect the existence or enforceability of any prior independent contractor agreements or any restrictive covenant agreements previously in place between CASSELL and KABLELINK, including, but not limited to those regarding confidential information, non-disclosure, non-solicitation, or non-competition.   CASSELL acknowledges that he has not relied on any representations, promises, or agreements of any kind that may have been made to him in connection with his decision to sign this Agreement, except for those expressly set forth in this Agreement.

**5.3    Binding on Plaintiff.**  CASSELL represents and warrants that he understands that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, this Agreement will remain binding and effective and the parties expressly accept and assume the risk of such possible differences and agree that this Agreement shall remain binding and effective, notwithstanding such potential differences.

**5.4    Full and Final Release of FLSA Claims.**   CASSELL represents and warrants to KABLELINK that he understands and agrees that this Agreement shall act as a full and final release of all FLSA claims of every nature and kind whatsoever that have arisen, or that could have arisen between him and KABLELINK, whether such claims are currently known or unknown, and whether they were foreseeable or unforeseeable.

**5.5    Recitals Incorporated.**  All of the recitals and representations described above or referred to in this Agreement are herein incorporated by reference and specifically made a part of this Agreement, and the same are acknowledged as having been relied upon by the parties.

**5.6    Counterparts.**  This Agreement may be executed in counterparts.  A photocopy, digital image, or facsimile of this Agreement shall be binding and fully admissible as an original for purposes of this lawsuit or enforcing this Agreement.

_B.C._
CASSELL

_T.C._
KABLELINK

HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES
SET FORTH HEREIN, CASSELL FREELY AND KNOWINGLY, AND AFTER DUE
REFLECTION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND
RELEASE KABLELINK OF ANY AND ALL FLSA CLAIMS HE NOW HAS, HAD, OR MAY
HAVE AGAINST KABLELINK.   IN WITNESS WHEREOF, CASSELL AND KABLELINK
HAVE EXECUTED THIS AGREEMENT.   CASSELL KNOWINGLY AND VOLUNTARILY
EXECUTES THIS WAIVER ON HIS OWN BEHALF AND ALSO ON BEHALF OF HIS HEIRS,
AGENTS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS THAT HE MIGHT HAVE
NOW OR IN THE FUTURE.   CASSELL SPECIFICALLY ACKNOWLEDGES THAT HE HAS
READ THIS AGREEMENT AND THAT HE UNDERSTANDS THE TERMS AND CONDITIONS
OF THIS AGREEMENT.

| CHRISTOPHER CASSELL | KABLELINK COMMUNICATIONS, LLC |
|---|---|
| By: | By: |
| Dated: 2/20/13 | Dated: 3/13/13 |

B.C.
CASSELL

T.C.
KABLELINK